YORK *v.* STATE.

Opinion delivered October 18, 1909.

1.  JURORS—ERROR IN SUSTAINING CHALLENGE—WAIVER.—If it was error to excuse jurors in a capital case because they did not believe in capital punishment, such error was not prejudicial if the defendant failed to exhaust his peremptory challenges. (Page 585.)

2.  CRIMINAL LAW—JUDGES EXCHANGING CIRCUITS DURING TRIAL.—It was not reversible error for the regular circuit judge to exchange circuits with another circuit judge · during the trial of a criminal case. (Page 586.)

Appeal from Dallas Circuit Court; *Henry W. Wells* and *Antonio B. Grace,* Judges; affirmed.

*Goodwin & McHaney* and *Herring & Williams,* for appellant.

1.  Mere disbelief in capital punishment is not a ground of disqualification of a juror. Kirby's Dig., § 2363, sub-div..7; 17 Am. & Eng. Enc. of L., 2d Ed. 1134, sub-div. "d;" 16 Ark. 579. The statute, *supra,* places disqualification to serve as a juror in a capital case on the sole ground of entertaining such conscientious opinions as will preclude the juror from finding the defendant guilty. There was neither legal nor discretionary ground for the court's excusing the five jurors from the regular panel upon a mere expression of disbelief in capital punishment. 17 Am. & Eng. Enc. of L. 1156 and 1157, note 2; 24 Cyc. 251, sub-div. 3 and cases cited. A special venire can be summoned only under the conditions named in the statute. Kirby's Dig., § 4526. Talesmen can be summoned only when the regular panel is exhausted or otherwise engaged, and, except in such event, the regular panel of jurors must be used in the trial of all cases during their term of service. *Id.* § 4528. Defendant was entitled

to have the jury drawn from the whole panel in the manner provided by statute. *Id.* § § 2347, 2348. A failure to comply substantially with the procedure provided by law in the selection of jurors is error. 24 Cyc. 367, sub-div. "A;" 50 S. W. 241; 20 Ky. L. 184; 80 Va. 555.

2. The exchange of circuits in the midst of the trial, whereby the regular judge absented himself and a judge from another circuit presided until the trial was completed, was error. It was neither within the spirit nor the letter of our Constitution and laws. 23 Cyc. 565; 14 Colo. 419; 24 Pac. 258; 143 Cal. 462; 77 Pac. 153; 192 Ill. 493; 55 L. R. A. 240; 75 Miss. 527; 71 Ark. 113; art. 7, § 21 Const. (Ark.) 1874; *Id.* § 22; Kirby's Dig., § 1321. In prosecutions for felonies the continual presence of the judge during the entire course of the trial is essential. 192 Ill. 493; 21 Enc. Pl. & Pr. 978, 979 and notes; 88 Ark. 69; 71 Ark. 115. And his judicial authority cannot be delegated to another. 75 Miss. 527; 10 Am. St. Rep. 154; 118 Ind. 350.

3. Instructions given on the part of the State wholly ignore appellant's right to stand his ground in his own house, but put upon him the duty to retreat in the face of danger; and the fact that the court gave instructions at appellant's request to the effect that he could stand his own ground in his own premises without retreating did not cure the defect in the State's instructions. The two sets of instructions contradicted each other, and were misleading. 85 Ark. 52; 13 Ark. 360; 54 Ark. 588; 55 Ark. 397. The ninth instruction evidently meant that the defendant must retreat, even though assaulted in his own house, if consistent with his safety and thereby he could avoid the danger and avert the necessity of the killing. That is not the law. 69 Ark. 650; 33 Am. St. 83, 87; 87 Am. St. Rep. 910; 2 Bishop, Crim. Law, 653; 8 Mich. 177; 27 O. St. 188.

*Hal L. Norwood,* Attorney General, and *C. A. Cunningham,* Assistant, for appellee.

1. A defendant has no vested right to be tried by any particular juror. He is entitled to a fair and impartial trial by a jury of his peers, and that is the only guaranty. If there was error in excusing the five jurors, it was not prejudicial. Moreover, it is not shown that appellant exhausted his challenges. 19 Ark. 22; 45 Ark. 165; 50 Ark. 492; 69 Ark. 449; 71 Ark. 86;

72 Ark. 145. The court's decisions upon challenges to the panel and for cause shall not be subject to review. Kirby's Dig., § 2430 ; 28 Ark. 547. Are not his rulings as to the qualifications of jurors within the spirit of this statute? Again it is held that erroneous acceptance or rejection of a juror is no ground for new trial. 29 Ark. 17; 30 Ark. 343; 32 Ark. 763; 35 Ark. 639; 69 Ark. 322.

2. Judge Wells presided through the taking of testimony, instructed the jury, and the exchange of circuits was not effected until after part of the argument was heard. No prejudice could have resulted by the exchange, and, indeed, none is claimed. This is not a case of a judge absenting himself during a trial and leaving the parties without control. There was a competent judge present and presiding throughout the whole of the trial. No prejudice being shown, appellant cannot complain. 81 Ark. 301; 92 Ga. 65; 110 Ga. 370; 73 Ark. 148; 54 Ark. 6; 51 Ark. 132.

3. The instructions are to be considered as a whole. When that is done, it appears that the whole law of this case was given to the jury. 64 Ark. 250; 66 Ark. 601; 74 Ark. 431; *Id.* 377.

BATTLE, J. James York was indicted at the August, 1908, term of the Bradley Circuit Court for murder in the first degree committed by killing Homer McLain, and was tried in the Dallas Circuit Court, after a transfer of the cause to that court, on the 23d day of June, 1909, and convicted of voluntary manslaughter, and his punishment was fixed at three years' imprisonment in the State penitentiary.

In impaneling the jury to try the defendant the trial court caused the panel of twenty-four jurors, selected by jury commissioners, to serve at the June, 1909, term, of the Dallas Circuit Court, to be sworn, over the objection of the defendant, to answer questions touching their qualifications to serve as jurors in the trial of the defendant, and asked the whole panel "if they believed in capital punishment," and five answered that they did not, and were excused from serving. The court then ordered the sheriff to summon five bystanders to take the places of the five jurors excused, which was done, and the five talesmen, over the objection of the defendant, took the places of the five jurors who had been excused, and the names of the panel, as thus composed, were written upon separate slips of paper, and placed in

a box, and the names of the jurors selected to serve as a jury in the case, were drawn from the box in the manner provided by the statute.

Did the court commit a reversible error in excusing the five jurors and causing five others to be summoned and substituted in their places?

In *Meyer* v. *State,* 19 Ark. 156, a juror was challenged by the defendant for cause. The challenge was overruled. The defendant excepted to the ruling of the court, and stood upon his challenge, and he was sworn as a juror in the case. The court said: "After his competency was determined by the court, the prisoner did not get clear of him by peremptory challenge, but, permitting him to be sworn as a juror, rested upon his exception to the decision of the court, which he had a right to do;" and held that the trial court erred in overruling the challenge and for such error, in part, reversed the judgment of the circuit court, and allowed the defendant a new trial. Since that time this court has uniformly held that if, after a court has erroneously overruled a challenge of a juror for cause, the defendant elected to challenge him peremptorily, he could not avail himself of the error, unless he had exhausted his peremptory challenges, thereby holding that he could protect himself against such error, and would not be allowed to suffer by so doing if he exhausted his peremptory challenges before the completion of the jury. *Benton* v. *State,* 30 Ark. 328; *Wright* v. *State,* 35 Ark. 639; *Polk* v. *State,* 45 Ark. 165; *Caldwell* v. *State,* 69 Ark. 322.

In *Mabry* v. *State,* 50 Ark. 492, the regular panel of jurors was exhausted, and the jury in the case remained incomplete, and bystanders were summoned to complete it, and, over the objection of the defendant on account of the manner in which they were summoned, were sworn as members of the jury. The court said: "When such objection is made, and the record fails, as in this case, to show that the defendant exhausted his peremptory challenges, it is unavailing in the appellate court, because the failure to challenge is an implied admission that the jurors are unobjectionable. * * * * The right of peremptory challenges is conferred as a means to reject, not to select, jurors. The object of the law is to obtain a jury impartial to the prisoner and the State alike. Neither has a right to the services of any par-

ticular juror. *Hurley* v. *State, 29* Ark. *22.* If all the talesmen had been challenged by him, and he had then been forced to accept a juror without the privilege of exercising his right of peremptory challenge, he might have cause to complain. But he has voluntarily taken his chance of acquittal at the hands of jurors whom he might have rejected, and he must abide the issue."

The record in the case at bar does not show that appellant exhausted his peremptory challenges, and according to the principles upon which the Mabry case rests he has no right to complain.

During the progress of the trial in this case and after all the evidence had been adduced and the instructions had been given by the court, and the opening arguments of both parties had been made by counsel, the Hon. H. W. Wells, Circuit Judge of the Tenth Judicial Circuit of the State of Arkansas, and the judge of the Dallas Circuit Court, then presiding in the trial, and the Hon. A. B. Grace, Circuit Judge of the Eleventh Judicial Circuit of the State of Arkansas, by an agreement spread upon the record, exchanged circuits, the former vacating the bench and the latter immediately occupying it and presiding during the remainder of the trial, and until the arguments were completed. The motion for new trial was overruled, and the prisoner was sentenced, and judgment rendered, and an appeal was prayed and granted.

Did the judges commit a reversible error in exchanging circuits at the time they did?

Section 22 of article 7 of the Constitution of this State provides: "The judges of the circuits may temporarily exchange circuits or hold courts for each other, under such regulations as may be prescribed by law." And section 1321 of Kirby's Digest says: "The judges of the circuit courts may by agreement temporarily exchange circuits or hold courts for each other for such length of time as may seem practicable and to the best interest of their respective circuits and courts." And section 1322 provides: "The judges exchanging as aforesaid shall have the same powers and authority while holding courts for each other as the judge for the circuit in which term or terms shall be held."

This case is unlike *Stokes* v. *State, 71* Ark. *112,* where the judgment of the circuit court was reversed because the trial

judge lost control of the proceedings of the court by his temporary absence. In this case the proceedings of the court were at all times under the direct supervision of a judge fully authorized to control them. We are unable to see that appellant could have been prejudiced by the exchange of the judges unless it be in the decision of questions of evidence. But this could not affect the legality of the exchange, as the witnesses whose testimony may be in question in such cases may be recalled and required to testify what they had stated in the trial, and go through the same course of examination. *Bullock* v. *Neal,* 42 Ark. 278. In the case cited this court held that "when the judge at a trial becomes sick and unable to proceed after the evidence is all in and the instructions have been given to the jury, the trial should proceed under a special judge, before the same jury, and without rehearing the testimony." That case is decisive in this, the judge in the case cited being a special judge and in this case a regular judge vested by the Constitution and the statute with the same powers and authority as the judge of the Dallas Circuit Court had.

In the trial of appellant the court instructed the jury, over the objection of the appellant, in behalf of the State, in part, as follows:

"8. In ordinary cases of one person killing another in self-defense it must appear that the danger was so urgent and pressing that, in order to save his own life or to prevent his receiving great bodily injury, the killing of the other was necessary, and it must appear also that the person killed was the assailant, or that the slayer had really and in good faith endeavored to decline any further contest before the mortal blow or injury was given.

"9. In order to justify the taking of life in self-defense, the party must employ all means within his power, consistent with his safety, to avoid the danger and avert the necessity."

And at the request of the defendant instructed the jury, in part, as follows:

"7. The court instructs the jury that if you find from the evidence in this case that the defendant, Jim York, was in his place of business or residence, or was in a place of business where he was in control, in the town of Vick, in Bradley County, Arkansas, when the killing occurred, as alleged in the indictment,

if you find that the killing so alleged did occur, then the court instructs you that the defendant, Jim York, had a right to be in his place of business or residence, and if you find from the evidence that the deceased, Homer McClain, by himself or in company with others, came into the defendant's place of business or residence with the intent of assaulting the defendant or offering him personal violence, or, being in his place of business or residence, formed the intent of assaulting him or offering him personal violence, and by overt acts or words made it appear to defendant that he was in danger of losing his life or of receiving great bodily injury, or that he was about to be assaulted at the hands of deceased, Homer McClain, or at the hands of deceased in company with others, then the court instructs you that the deceased, Homer McClain, and those acting with him, if any, were trespassers, and the defendant had the right to defend himself and act upon the danger as it appeared to him, whether the danger was real or not; and if you believe from the evidence, or if you have a reasonable doubt from the evidence as to whether the deceased, Homer McClain, came to the defendant's place of business or residence with the intent, or, being in the defendant's place of business or residence, formed the intent of assaulting the defendant or offering him personal violence, and by any overt act or words gave defendant reasonable grounds to believe, from his point of view, that he was in danger of being assaulted or receiving personal violence at the hands of deceased, or at the hands of deceased in company with others, and that defendant, while honestly defending himself against such assault or proffered personal violence, and without fault upon his part, killed the deceased by stabbing him, the killing would be justifiable, and under those circumstances you must acquit the defendant."

Appellant contends that the instructions given in behalf of the State conflict with that given at his request, and should not have been given. Were they prejudicial? All of them were based upon evidence. Those given in behalf of the State were general, and that given at the instance of the defendant was specific, applying the law to the facts as defendant contended they were, and directing the jury to acquit in the event they found the facts to be as stated in the instructions given at the request of the defendant. On the other hand, those given in behalf of

the State stated general rules of law without any directions as to the verdict. Construed as a whole, as they should have been, we are unable to see how those given in behalf of the State could have prejudiced the defendant.

The evidence was sufficient to sustain the verdict.

Judgment affirmed.