STATE OF IOWA, Appellee, v. JIM McCRAY, Appellant.

**BURGLARY:** Allegation of "Ownership." A general allegation of
1  ownership in a named person of burglarized premises is sufficiently supported by proof that the named person was simply the tenant of the legal title holder. (Secs. 5286, Code, 1897, 5289, Code Supp., 1913.)

**INDICTMENT AND INFORMATION:** Accessories Before the Fact.
2  Accessories before the fact are very properly indicted just as though they had actually committed the full criminal act. (Sec. 5299, Code, 1897.)

**CRIMINAL LAW:** Completing Trial with Substituted Judge. The
3  trial of a felony which is interrupted by the sickness of the trial judge may validly proceed to a final determination before another judge of the same court who familiarizes himself with the record, when the accused (1) asks no continuance, (2) does not ask for the recall of the witnesses already examined, and (3) fully consents through his counsel that the trial shall so proceed.
SALINGER, J., dissents.

BURGLARY: Evidence to Sustain Verdict. Evidence held sufficient to sustain a verdict of guilty.

*Appeal from Woodbury District Court.*—J. W. ANDERSON and W. G. SEARS, Judges.

NOVEMBER 1, 1920.

THE appellant was indicted for the crime of breaking and entering. He was tried to a jury, found guilty, and judgment pronounced. He appeals.—*Affirmed.*

*C. R. Metcalfe,* for appellant:

*H. M. Havner,* Attorney General, *B. J. Powers,* Assistant Attorney General, *O. T. Naglestad,* County Attorney, and *O. D. Nickle,* Assistant County Attorney, for appellee.

PRESTON, J.—1. The indictment charges that defendant "did then and there, etc., break and enter a building, to wit: a store. * * * The said building then and there being owned by Sam Simonoff, and in

1. BURGLARY:
allegation of
"ownership."

which building were then and there kept by the said Sam Simonoff, money, goods, merchandise, and other valuable things, for the use, sale, and deposit of said Sam Simonoff," etc. The testimony shows that Simonoff was not the owner of the legal title, but that he leased the building, and was in possession, and owned the stock of goods, and operated the store. It is thought by appellant that there was a fatal variance between the allegations in the indictment and the proof, as to the ownership of the building, and that this motion in arrest of judgment should have been sustained. Code Section 5289 specifies what the indictment must show, and Subdivision 6 reads:

"That, when material, the name of the person injured

or attempted to be injured be set forth when known to the grand jury, or, if not known, that it be so stated in the indictment."

In some cases, the exact name is not material, and an erroneous allegation as to the name is not prejudicial. *State v. Leasman*, 137 Iowa 191; *State v. Burns*, 119 Iowa 663.

Appellant cites *State v. Morrissey*, 22 Iowa 158, *State v. McConkey*, 20 Iowa 574, *State v. Jelinek*, 95 Iowa 420, *State v. Wrand*, 108 Iowa 74, and *State v. Wasson*, 126 Iowa 320, as holding that the ownership of the building must be alleged, and in the owner. In the *Morrissey* case, the indictment simply charged defendant with breaking and entering a barn, without giving the name, either of the owner, tenant, or party in possession. In the *McConkey* case, defendant was charged with trespass, and the indictment charged that defendant did commit willful trespass upon the land of another, and not his own, describing the land, without any further description of the owner. In the *Jelinek* case, it was charged that defendant broke into the store of certain persons named, known as the Grange Store. This indictment was held sufficient, and a conviction sustained, where it was shown that the store was known as the Grange Store, though it also appeared that the persons named did not own this store as individuals, but as a corporation. The *Morrissey* case was distinguished. A conviction was sustained in the *Wrand* case, where, in the indictment, the ownership of the building and of the goods is laid in James A. Morrow, and the proof showed that they belonged to and were in possession of John A. Morrow. The opinion states that it has been uniformly held that, in the absence of prejudice, an erroneous allegation of the name of the party injured is immaterial. It is also said that it was unnecessary to allege or prove who owned the goods (citing cases). In the *Wasson* case, the charge was robbery. The indictment charged the defendant with stealing, etc., from the person of one Malone, certain money, but without otherwise alleg-

ing the ownership of the property. The indictment was held insufficient, the court saying, in part, that, to constitute the crime of robbery, there must be larceny from the person, and that the rule in this state is that an indictment charging robbery must allege the ownership of the property. The *Wasson* case was cited in *State v. Clark*, 141 Iowa 297, 302, a false pretense case. We said that the three crimes of robbery, larceny, and obtaining property by false pretenses, have many essential elements in common, and that, in each, the gist of the offense is the felonious taking and conversion of the property of another. In breaking and entering, the gist of the offense is the breaking and entering. It is not necessary that there should be any larceny at all. The State cites Code Section 5286, which provides:

"When an offense involves the commission of or an attempt to commit an injury to person or property, and is described in other respects with sufficient certainty to identify the act, an erroneous allegation as to the name of the person injured or attempted to be injured is not material."

They also cite *State v. Lee*, 95 Iowa 427, *State v. Porter*, 97 Iowa 450, *State v. Semotan*, 85 Iowa 57, *State v. Emmons*, 72 Iowa 265, 267, and *State v. Burns*, 155 Iowa 488, where are cited numbers of others of our cases which hold, we think, that, under the circumstances shown in the instant case, there was no variance. In some of the cases, it is said that burglary is not an offense against the fee title of the realty, but is an offense against the security of its occupancy or habitancy, and that, in an indictment for burglary, ownership means any possession which is rightful, as against the burglar. Under many circumstances, the ownership may be laid with equal propriety in one person or in another, in the owner or his tenant, in the master or in the servant occupying under him. The purpose of the allegation of ownership in an indictment for burglary is to specify and identify the offense. On these propositions, see cases cited in the *Burns* case. There was no variance.

2. The court charged, in substance:

"That all persons concerned in the commission of a public offense, whether they directly commit the act constituting the offense, or aided or abetted in its commission, must be indicted, tried, and punished as principals. So, in this case, it is not necessary for the State to show that the defendant, James McCray, actually did the act constituting the offense, if it is shown beyond a reasonable doubt that he was present, aiding and abetting another or others in doing the act, and thereby concerned in committing the offense. It will be for you to say whether he committed the act, or was concerned in its commission by another or others," etc.

*2. Indictment and Information: accessories before the fact.*

Appellant contends that, since no conspiracy was charged in the indictment, and there was no charge that another aided or abetted the commission of the offense, the instruction was erroneous. The instruction is in harmony with Code Section 5299, which provides that the distinction between an accessory before the fact and a principal is abrogated, and all persons concerned in the commission of the offense, or who aid and abet its commission, must be indicted as principals, etc.

It is also thought that there is no evidence tending to show that defendant aided and abetted any person, and that it was error to instruct upon an issue not in the case. The evidence which justified the jury in finding that defendant was concerned in the commission of this offense will be referred to later.

3. It appears that the trial was commenced before Judge Anderson, and, as appellant states it, the evidence for the State was introduced, and the defendant gave his testimony, and then the case was taken up, and the trial continued before Judge Sears, another judge of the same district, who finished the trial and instructed the jury. It appears that Judge Anderson was taken sick, and taken to the hospital, and the

*3. Criminal Law: completing trial with substituted judge.*

matter of proceeding with the trial was taken up in open court. No objection was made to this procedure, no request for a continuance, or that a new jury be called, or that the witnesses be recalled to testify again; and, in fact, the record clearly shows that defendant expressly consented thereto,—at least his counsel did so in open court, and in the presence of the defendant. True, the record does not show that the defendant in person, by his own words, consented; but he was charged with a felony, and the law requires his presence at all stages of the trial, and, in the absence of any showing to the contrary, it will be presumed that he was present, as the law requires. The matter is first raised in the motion for new trial.

Appellant cites Code Section 241, which provides that judges shall not sit together in the trial of cases, etc. These judges did not sit together. The argument is that, since the statute prohibits them from sitting together, by analogy they could not sit apart, in the actual trial of the same case. They cite 16 Standard Encyc. of Procedure 639, to the effect that, whenever one of the judges has taken cognizance of a case, ordinarily no other judge has the power to interfere in the matter.

It is conceded that there are some acts that different judges may perform in the same case. We assume that the real objection is, as argued, that ordinarily it is necessary, in passing upon the motion for new trial, that the judge should have heard the evidence. The record shows that Judge Sears familiarized himself with the evidence which had been received, before proceeding with the testimony. We are compelled to do that from the record, without seeing the witnesses. But conceding, for the purposes of the case, that ordinarily the rule is as contended, still there was an advantage to the defendant in proceeding with the trial. He was confined in jail, and doubtless desired a speedy trial. As said, he did not ask for a continuance, but desired and consented to proceed. The contention of the State is, in effect, that, defendant having

consented to proceed, he may not speculate upon the chances of an acquittal but take advantage of it if convicted. It is said that, as a general rule, a succeeding judge has authority to hear and determine a motion for new trial, in a case heard by his predecessor, where the latter has ceased to preside, and has departed from the district in which the trial was had, where his term of office has expired, or where he has died. A judge, under such circumstances, must act on the evidence upon which the verdict was founded, which may be ascertained by reference to the notes of the trial judge, or by his affidavit, or that of the counsel in the case, by re-examination of the witnesses, or by any other lawful mode. 23 Cyc. 567. See, also, *Manning v. Mathews,* 66 Iowa 675; *Hull v. Chicago, B. & P. R. Co.,* 65 Iowa 713; *York v. State,* 91 Ark. 582 (121 S. W. 1070). In the last-named case, under a statute authorizing judges to temporarily exchange circuits with the same powers as in their own, it was held no error in judges to exchange, pending a prosecution before one of them in which all the evidence had been adduced. the instructions given, and the opening arguments of counsel made. In that case, the second judge presided during the remainder of the trial, and the arguments were completed, the motion for new trial overruled, and judgment pronounced. In that case, there was an agreement entered of record, in regard to the exchange, but we do not understand that the defendant agreed to the exchange. At any rate, there is no question of his consent discussed or decided. In that case, as here, the proceedings were, at all times, under the direct supervision of a judge fully authorized to control them, since our statute authorizes judges to exchange. Code Section 240. In the *York* case, the court said further:

"We are unable to see that appellant could have been prejudiced by the exchange of the judges unless it be in the decision of questions of evidence. But this could not effect the legality of the exchange, as the witnesses whose testimony may be in question in such cases may be recalled

and required to testify what they had stated in the trial, and go through the same course of examination."

While the cases just cited may not be precisely in point, they are somewhat analogous, and show that, under some circumstances, one judge may partly try a case, and another judge complete it; and the State claims that this is especially so where the defendant consents thereto; and they contend that, in the absence of such consent, one judge of the district court has authority to dispose of all business undisposed of, and that one judge may preside at the trial of a criminal case, and another judge announce the sentence. They cite *State v. Jones*, 115 Iowa 113, 120; *Renner Bros. v. Thornburg*, 111 Iowa 515, 517; *State v. Emmons*, 72 Iowa 265, 268. The State further contends that the error, if there was any, was invited by the defendant, and cannot now be made a ground for reversal. They cite *Proffitt v. United States*, 264 Fed. 299, 303.

In *State v. Wilson*, 166 Iowa 309, 325, a murder case, counsel for defendant, in his presence, admitted, in the opening statement, that the shots fired were the cause of death. The court held that the statement of counsel was presumed to have been with the consent of defendant, and that it was unnecessary to prove the fact admitted. Defendant was not confronted with witnesses against him as to such evidence.

We think it was competent, under the circumstances of this case, to consent to the continuation of the trial before Judge Sears. The record shows:

"Court adjourned until 2 o'clock, January 26, 1920. And now at this time, at 2:00 o'clock P. M., January the 26th, 1920, the following proceedings were had before the Honorable W. G. Sears, judge in and for the fourth judicial district of Iowa:

"Court: Let us make the record on this now.

"Mr. Metcalfe: All right.

"Court: County Attorney, you might proceed and dictate your record. My idea is like this: It ought to be shown that this case has been partly tried before Judge

Anderson, and he was taken sick and could not proceed with the case further, and that the defendant is in jail, and by consent of all parties in open court, that the case proceed before me, and with the same jury.

"Mr. Metcalfe: Yes, that is perfectly satisfactory to the defendant.

"Court: Do you want to add anything else? I was just giving you my suggestion.

"Mr. Nickle: I think that covers it.

"Court: Now let's see, the defendant has started in on his evidence.

"Mr. Metcalfe: Yes, your Honor.

"Court: Next witness for the defendant. It has been suggested that it be further stipulated that Judge Anderson and myself are the judges in this county, Woodbury County, and that Judge Anderson was taken sick and taken to the hospital this morning, and by consent of the defendant, the trial proceed before the Honorable W. G. Sears, legal presiding judge in place of Judge Anderson.

"Mr. Nickle: Better show the court has made himself familiar with the testimony taken in this case before.

"Court: Yes."

Under this record, and under the law, we are of opinion that Judge Sears had a right to conclude the trial,—in any event, there could have been no prejudice to the defendant. There is no error at this point of which appellant can complain.

4. Appellant challenges the sufficiency of the evidence to sustain the conviction. It appears that a witness saw defendant in the store, about 4 o'clock Sunday morning of a day in August. Two others were in the store at the same time, but the other two escaped. The electric light in the store was shining. The store was locked, the night before; and, when the witness discovered the parties in the store, he found the glass broken and scattered on the walk. The police say that, when they arrived, they found

4. BURGLARY:
evidence to
sustain ver-
dict.

a window about four feet square broken out. The witness Wentz, who first saw defendant in the store, says he stooped down outside, so that he would not be seen, and stayed there about three minutes; saw defendant walking from one counter to another, in the store.

"I heard someone talking, and I thought it was defendant, and he said: 'Come on, let's go before we get into trouble, all I wanted was the money;' and there was another voice, sounded like, said: 'Come back here.' He said: 'No, let's go before we get into trouble. All I want is the money. It is getting light outside.' Q. Now, this voice you heard, when he said to him, 'Come on, back here,'— where did it sound like it was? A. Sounded somewhere around in the front part of the store, in that section,—part of the store McCray was in. Q. Well, could you tell from the voice whether it sounded from the back part of the store or the front part? A. Well, it was back of some of the counters some place, behind the stuff that is there. I could not see them. They might have seen me when I came up there: that is probably why they asked defendant to come back there."

When the police came, they asked defendant how he got entrance, and he answered, "Find out." When the police came, the lights were burning, and defendant was just dropping a sack of sugar and picking up a sack of flour and starting to the front end of the store. Five sacks of sugar had been moved up by the door, and some flour by the window; also, a gunny sack, with some tobacco and cigars in it. Defendant was taken to the police station and searched, and he had two oranges and five or six cigars on his person, but no money. The circumstances abundantly show the intent. *State v. Worthen*, 111 Iowa 267; *State v. Fox*, 80 Iowa 312; *State v. Teeter*, 69 Iowa 717; *State v. Mecum*, 95 Iowa 433; *State v. Cook*, 188 Iowa 655.

It is argued by appellant that the evidence does not show that he personally broke into the building. As we understand the argument, it is claimed that it is incumbent

upon the State to show which individual of the three did the breaking. This would be impossible, and is not necessary. The evidence was amply sufficient to justify the jury in finding that the three parties in the store were acting together. It is claimed that defendant was intoxicated, and so much under the influence of liquor as to be incapable of forming an intent. There is evidence tending to show that, the day and evening before this transaction, defendant, with others, had been drinking heavily. Defendant claims to have kept count of the number of drinks and the quantity of whisky consumed, until, as he says, he became so drunk that he did not know what he was doing. But a witness for the State testifies that he saw defendant about 12 o'clock, before he was found in the store, and that he was not intoxicated at that time. He was walking from one counter to the other, when Wentz first saw him in the store; he was carrying heavy sacks of sugar and other things to the door, a thing he could not well do, if he was so much intoxicated as claimed, and a very rational and natural thing to do, if the breaking was for the purpose of larceny; and the police officers say that, when they came, and when he was at the police station, soon after, he was not intoxicated. There was a conflict in the evidence, and this is really about the only conflict in the evidence in the case. It was a question for the jury.

The defendant interposes a unique defense, which may have been regarded by the jury as unusual and somewhat suspicious. The contention is, in brief, that because before that, he had money, which was known to the two other parties, and had none when arrested, he was robbed of it by the other two when he was drunk, and that the other two broke into the store, and took defendant into the store, where the lights were shining, in order to rob him in the store. He says he became acquainted with two men who were working on the same job in July; that he met them a few times, and had a few drinks with them; that, on Saturday evening, August 7th, he met them at a pool hall, and they played some pool, and went out and

played cards for three or four hours. The abstract and
evidence show this to have been on August 7th, but the
argument is that it was the evening before the burglary.
He says he won at cards $30, and that he had $75 of his
earnings that he had collected prior thereto; that he was
ahead of the game, and that, when they quit, he loaned the
other two $5.00 apiece, and gave four others $1.00 apiece,
and paid another party $2.50; that then they had some
drinks, and got into a crap game; that, later in the
evening, the two men drank with him, and they all put in
together and bought two quarts of whisky, for $12 a quart,
and went into a back lot, in an old dray wagon, and sat
down and drank; and that the boys were telling toasts,
and taking good shots out of the bottle, and he got too
much, and that is all he remembers. He says that, when
he was taken to the police station, early Sunday morning,
he had been considerably beaten up, and that his clothes
were torn, and his money gone. He says he does not know
who beat him up; has no remembrance of being in
Simonoff's store; does not know how he got into the store.
According to the State's witnesses, defendant was not as
badly beaten up as he claims to have been. It is thought
by defendant that a person would not be likely to be in
the store committing a burglary, with the lights shining.
Possibly this would not be the usual way; but it might be
necessary to have some light, either by a flashlight or other-
wise, to sort out the things they wanted, and get them
near the door to take away. The very boldness of the thing
may have been thought by the defendant and the others
to be likely to allay suspicion. It was nearly daylight. It
occurs to us that it would be equally or more improbable
that the other two would carry defendant into the lighted
store room, for the purpose of robbing him, with the lights
shining, rather than to take him down a dark alley. But
there is no evidence that he was so taken into the store,
and there is no evidence that he was robbed of his money.
Counsel for defendant argue that the fact he was "beaten
up," and the money gone, shows that he was robbed; but,

according to his own story, he had been drinking and gambling, and was giving away his money to several others, and spending it for high-priced whisky. The evidence as to what he said and did, when he was first seen in the store, indicates that he and the other two had broken and entered the store for the purpose of larceny. Clearly, it was a question for the jury, and their verdict has ample support in the testimony. The judgment is—*Affirmed*.

WEAVER, C. J., LADD and EVANS, JJ., concur.

SALINGER, J. (dissenting). Judge Anderson heard part of the evidence. Judge Sears read what Judge Anderson had heard, and heard the rest. The retirement of Judge Anderson was due to illness, and no one is to blame for the conditions that brought Judge Sears into the case. The ordinary course, if judge or juror became too sick to go on with a case partly tried, is to deal with the case as one of mistrial, and to order a new trial, or possibly a continuance. My understanding is that, if defendant had objected to the exchange of judges, and had been overruled, it would be conceded that that would have been error. But here it may well be claimed that defendant consented. If he did this, he waived the objection he now makes, if he could waive it. I dissent because of opinion that he could not consent to the trial of a charge of felony by a judge who had heard part of the evidence only. One argument here is that defendant cannot consent and speculate; that he cannot put himself where he will be satisfied with his agreement if acquitted, and nullify such agreement if convicted. But the same argument can be as well made as to a consent to try a felony charge to a jury of less than 12. And we have held that a jury of 12 cannot be waived, in a felony trial. The reason for such holding is bottomed on public policy. An individual cannot set aside regulations that protect against unjustified conviction of grave crimes. He may not care whether, though innocent, he be convicted. But the State does care. And it will not

permit him to consent to anything which will make it less certain that no one not duly proved guilty will be found guilty. He cannot effectively consent to a jury of less than 12 because the requirement of 12 is a safeguard, or deemed to be a safeguard, against unwarranted conviction. For 6 or 11 might convict, while, on a fuller jury, those 6 or 11 could not obtain a conviction. Suppose 12 jurors heard part of the evidence, and one then became too sick to serve, would we, on conviction, sustain on consent that another who had read the evidence already heard should take the place of the sick juror? Why does not the illustration hold good? The Supreme Court will not interfere with the verdict of conviction where the evidence is in conflict, especially if the trial judge declines to interfere. This refusal is weighty, because the trial judge is a "thirteenth juror," and this court is not a juror at all. This means the trial judge has a power of review greater than that of the appellate court, because he has seen and heard the witnesses. Convictions may be first passed upon by one who has that advantage. If the exchange here is upheld because of consent, we sanction the waiver of a protection against improper convictions—a protection demanded by public policy. And it is no answer that the defendant can appeal. As already indicated, on the appeal he cannot have the review permitted the trial court. And were it not for an express statute, he could not have his evidence certified by either judge; for, neither having heard all the evidence, neither could certify that the transcript contained the total evidence. The very fact that it was found necessary to enact a statute to meet this situation is surely highly significant. So is the fact that universally it has been held there must be a new trial ordered, if the judge die or become incapacitated during the trial, or even if this happens before the evidence has been certified.

If the majority opinion be followed to its logical end, we would be compelled to sustain a conviction if, in disregard of the policy of all English-speaking peoples, the

jury was told, on consent of defendant, that the accused should be found guilty unless he had proved that he was innocent.

For the reasons stated, I would reverse.