PEOPLE *v.* SANFORD.

1. COURTS—JUDGES—DISTINCTION BETWEEN POWERS CONFERRED ON COURTS AND JUDGES.

Under Constitution and laws, there is clear distinction between powers conferred upon courts and judges thereof.

2. SAME—MOTION FOR NEW TRIAL COURT PROCEEDING.

Motion for new trial is court proceeding, and may, after due notice, be heard at any time when court is in session.

3. CRIMINAL LAW—COURTS—MOTION FOR NEW TRIAL.

Where motion for new trial in criminal case was duly noticed and came on for hearing before special judge appointed by presiding circuit judge on day to which it had been regularly adjourned, action thereon was taken by court and not by judge.

Effect upon conviction of failure to give accused an opportunity to plead, see annotation in 13 L. R. A. (N. S.) 811; 45 L. R. A. (N. S.) 664.

4. SAME—SPECIAL JUDGE MAY ASSUME APPOINTMENT STATUTORY.

Special judge appointed by presiding circuit judge (3 Comp. Laws 1915, § 14546 *et seq.*) to hear motion for new trial in criminal case, and, if denied, to pass sentence, had right to assume that said appointment was pursuant to statutory provision and on account of disqualification of trial judge.

5. SAME—DEFENDANT AND COUNSEL PARTICIPATING IN HEARING BEFORE SPECIAL JUDGE MAY NOT COMPLAIN LATER.

Defendant and his counsel participating without objection in hearing on motion for new trial in criminal case by special judge appointed by presiding circuit judge may not thereafter object that said judge lacked power and authority to hear it, in absence of claim that they were misled as to proceeding.

6. SAME—NEW TRIAL—PRIVILEGE—WAIVER.

Defendant in criminal case has no constitutional or statutory right to have motion for new trial heard by trial judge, but said right is in nature of privilege accorded him by court procedure and may be waived by him.

7. SAME—DEFENDANT MAY WAIVE RIGHTS IN NATURE OF PRIVILEGES.

Rights of accused incident to criminal prosecution are largely for his benefit, and those in the nature of mere privileges as distinguished from those that are jurisdictional may be waived by accused.

8. SAME—SPECIAL JUDGE HEARING MOTION FOR NEW TRIAL COULD IMPOSE SENTENCE.

Special judge lawfully appointed to hear motion for new trial in criminal case could proceed to impose sentence on defendant on denial of motion.

9. SAME—TRIAL—REMARKS OF COURT.

Remarks of trial judge, in cautioning jury against conduct which might result in mistrial, ''which would cost this county several thousand dollars,'' *held*, not to have influenced jury in rendering verdict of guilty.

10. SAME—AFFIDAVIT OF JUROR.

Affidavit of juryman relating to influence on verdict of court's remarks as to cost to county in case of mistrial may not be considered.

11. ARSON—EVIDENCE—MOTIVE.

In prosecution for arson, there was no error in admitting proof that property burned was insured, and of defendant's financial condition at time, as bearing on motive.

12. CRIMINAL LAW—CROSS-EXAMINATION.

Excluding cross-examination of witness for prosecution as to his signing statement implicating defendant through fear of being put in jail was not reversible error, where it clearly appeared that witness claimed to have signed said statement through fear of arrest.

13. SAME—NEW TRIAL—CONFLICTING STATEMENTS—ABUSE OF DISCRETION.

Denial of motion for new trial, in prosecution for arson, because of conflicting statements of witnesses in affidavits confessing that they had been hired by defendant to set fire to buildings burned and later denying that defendant had anything to do with it, *held,* not abuse of discretion.

Error to Osceola; Cutler (Hal L.), J. Submitted June 19, 1930. (Docket No. 102, Calendar No. 34,539.) Decided December 2, 1930.

Stanley J. Sanford was convicted of arson. Affirmed.

*Penny & Worcester,* for appellant.

*Wilber M. Brucker,* Attorney General, *Harold J. Waples,* Assistant Attorney General, *William F. Umphrey,* Prosecuting Attorney, and *Robert B. Savidge,* Special Prosecuting Attorney, for the people.

SHARPE, J. Defendant reviews his conviction and sentence, on a charge of arson, by writ of error. The crime was alleged to have been committed on April 1, 1928. On a trial had in February, 1929, there was disagreement of the jury. The verdict of conviction was rendered on April 11th of that year. A motion for a new trial was filed on April 16th. Conviction rested largely upon the testimony of Lloyd Cornelius and Howard Plumb, who testified that the defendant hired them to set fire to the building burned, which was owned by him, and on

which he carried a considerable amount of insurance. Another building owned by defendant was destroyed by fire on September 3, 1928. The wife of an occupant of this building lost her life therein. An investigation as to the cause of these fires was conducted by certain officials of the State department of public safety. As a result thereof, Plumb and Cornelius were arrested. They admitted setting both fires, and, on arraignment on a charge therefor, pleaded guilty and were sentenced to be confined in the Michigan reformatory at Ionia. On the second trial, they were brought from the prison as witnesses, and again testified that the defendant had hired them to set fire to the building.

After the verdict convicting defendant had been rendered, these witnesses told certain parties in the jail that their testimony that defendant had hired them to set the fire was false, and that he had nothing to do with it. Affidavits so stating were filed on the motion for a new trial, and also affidavits by them that they had been induced to so state by what was said to them by another prisoner there in the jail, and that their testimony on the trial was true. Several witnesses were called on the hearing of the motion. The trial court was apparently much disturbed by the testimony then submitted, and adjourned the hearing to April 20th. He instructed the prosecuting attorney to submit the record to the attorney general and to the governor for investigation, suggesting that if the State officials had been "guilty of any corrupt practices, that they may be removed from office." The hearing on the motion was further adjourned by him from time to time until June 5th. In the meantime, a one-man grand jury proceeding had been conducted by Judge Collingwood of the 30th judicial circuit.

Act No. 213, Pub. Acts 1915 (3 Comp. Laws 1915, § 14546 *et seq.*), provides for the election of a presiding circuit judge. Section 2 reads as follows:

"The presiding circuit judge shall have full directory power over the matter of apportioning the work of the several circuits among the circuit judges of the State."

On May 27, 1929, the presiding circuit judge sent to Judge Collingwood the following request:

"Under the provisions of Act No. 213 of the Public Acts of 1915, you are respectfully requested to hold court in the 19th judicial circuit at Reed City, Michigan, on June 5, 1929, and continuing until completion of work."

On June 5th, the day the motion for a new trial was submitted, there was filed in the office of the clerk of the court an affidavit, reading as follows:

"Wilber M. Brucker, being duly sworn, deposes and says that he is and has been for the past year and upwards attorney general of the State of Michigan; that he has been advised by Honorable Hal L. Cutler, circuit judge of the 19th judicial circuit, that it is his desire that an outside circuit judge preside at the hearing on the motion for new trial in the above entitled cause and also pass sentence on the respondent in the event such motion is denied;

"That the assignment of an outside circuit judge to hear said motion and pass sentence on respondent if said motion should be denied was made by the presiding circuit judge of the State of Michigan, as a result of the request made by Judge Cutler of the 19th judicial circuit to such effect;

"That deponent has been further advised by said Judge Cutler that he ordered the disinterested investigation of the trial of the above entitled cause made by an outside judge, which investigation, com-

monly called a one-man grand jury proceeding, your deponent is informed and believes has but recently been concluded by the Honorable Charles B. Collingwood, circuit judge of the 30th judicial circuit.''

Pursuant to the assignment and request of the presiding circuit judge, Judge Collingwood convened the court on the adjourned day. He announced that he had been assigned to hold such court by the presiding circuit judge, and asked counsel if they were ready to proceed with the motion. He further stated that he ''would take up the matter of the hearing on the motion for a new trial * * * and would also pass sentence on respondent if said motion should be denied.''

No objection was made by the defendant or by his counsel, both of whom were then present, to proceeding with the hearing. The affidavits filed and testimony taken were presented and argument by counsel had. After due consideration, the motion was denied, and defendant was then sentenced to imprisonment for a period of not less than eight nor more than ten years. An application of defendant's counsel for bail pending review in this court was then made and denied. Error is assigned upon the action thus had.

The circuit court of Osceola county had jurisdiction of both the subject-matter and the person of the defendant. Had the term of Judge Cutler expired before the motion was submitted, his successor, or any other circuit judge appointed by the presiding circuit judge, might have convened the court on the adjourned day and disposed of all matters pending before it. Under our Constitution and laws, there is a clear distinction between the powers conferred upon courts and the judges thereof. The justices of this court, as well as the judges of the circuit

courts, are empowered as individual judges to perform certain duties. These are so well understood that they need not be enumerated. A motion for a new trial is a court proceeding, and may, after due notice, be heard at any time when the court is in session. This motion was duly noticed and came on for hearing before the court on a day to which it had been regularly adjourned. Action then taken was by the court, and not by the judge thereof. We can but assume that the appointment of Judge Collingwood was made at the request of Judge Cutler. When he took his seat upon the bench, the circuit court of Osceola county was then vested with all the power and authority it would have had had Judge Cutler been then presiding therein.

The question presented is not one of the jurisdiction of the court. It involves the right of the defendant to have the motion passed upon by the judge who tried the case. Had objection then been made, had Judge Collingwood been then informed that Judge Cutler's absence was not due to any reason which justified the appointment of a judge from another circuit to hear and dispose of the motion then pending, investigation would doubtless have been made and the fact determined. We are not called upon to decide the effect of the action taken by Judge Collingwood when sitting as a court had such an objection been made. He had the right to assume, as did the prosecuting officers, that the appointment had been made pursuant to the statutory provision, and on account of the disqualification of Judge Cutler.

The defendant was personally present. He was represented by able counsel. No claim is made that either he or they were in any way misled· as to the proceeding about to be taken. May they then by

their silence and participation in the proceeding yield their assent to the submission of the motion for a new trial to the judge then sitting as a court in the hope that it will be granted, and, if denied, urge the lack of power and authority on the part of Judge Collingwood to hear it? We think not.

The right, of which defendant complains that he has been deprived, is not one secured to him by any constitutional or statutory provision. It is in the nature of a privilege accorded him by court procedure. The distinction between a constitutional or statutory right and such a privilege was pointed out very clearly in the recent case of *Patton* v. *United States,* 281 U. S. 276 (50 Sup. Ct. 253), wherein, although the Constitution of the United States (article 3, § 2, clause 3) provides that "the trial of all crimes, except in cases of impeachment, shall be by jury," and it was conceded that a jury as therein provided for was one consisting of 12 men, "neither more nor less," it was held that the right to be tried by such a jury was in the nature of a privilege, and that it could be waived in the trial court by a defendant, either altogether or by consenting to a trial by a less number than 12. We quote therefrom:

"The record of English and colonial jurisprudence antedating the Constitution will be searched in vain for evidence that trial by jury in criminal cases was regarded as a part of the structure of government, as distinguished from a right or privilege of the accused. On the contrary, it uniformly was regarded as a valuable privilege bestowed upon the person accused of crime for the purpose of safeguarding him against the oppressive power of the king and the arbitrary or partial judgment of the court. * * *

"Upon this view of the constitutional provisions we conclude that article 3, § 2, is not jurisdictional, but was meant to confer a right upon the accused which he may forego at his election. To deny his power to do so is to convert a privilege into an imperative requirement."

The opinion of Mr. Justice Sutherland may be read with profit. It contains the following quotation from *Hack* v. *State,* 141 Wis. 346, 351 (124 N. W. 492, 45 L. R. A. [N. S.] 664):

"The ancient doctrine that the accused could waive nothing was unquestionably founded upon the anxiety of the courts to see that no innocent man should be convicted. It arose in those days when the accused could not testify in his own behalf, was not furnished counsel, and was punished, if convicted, by the death penalty or some other grievous punishment out of all proportion to the gravity of his crime. Under such circumstances it was well, perhaps, that such a rule should exist, and well that every technical requirement should be insisted on, when the State demanded its meed of blood. Such a course raised up a sort of a barrier which the court could utilize when a prosecution was successful which ought not to have been successful, or when a man without money, without counsel, without ability to summon witnesses, and not permitted to tell his own story, had been unjustly convicted, but yet under the ordinary principles of waiver, as applied to civil matters, had waived every defect in the proceedings.

"Thanks to the humane policy of the modern criminal law we have changed all these conditions. The man now charged with crime is furnished the most complete opportunity for making his defense. He may testify in his own behalf; if he be poor, he may have counsel furnished him by the State, and may have his witnesses summoned and paid for by

the State; not infrequently he is thus furnished counsel more able than the attorney for the State. In short, the modern law has taken as great pains to surround the accused person with the means to effectively make his defense as the ancient law took pains to prevent that consummation. The reasons which in some sense justified the former attitude of the courts have therefore disappeared, save perhaps in capital cases, and the question is, Shall we adhere to the principle based upon conditions no longer existing? No sound reason occurs to us why a person accused of a lesser crime or misdemeanor, who comes into court with his attorney, fully advised of all his rights and furnished with every means of making his defense, should not be held to waive a right or privilege for which he does not ask, just as a party to a civil action waives such a right by not asking for it.''

It follows this with a quotation of approval from the language of Judge Harlan in a dissenting opinion in *Schick* v. *United States,* 195 U. S. 65 (24 Sup. Ct. 826, 1 Ann. Cas. 585), that—

''The grounds upon which the decisions rest are, upon principle, applicable alike in cases of felonies and misdemeanors, although the consequences to the accused may be more evident as well as more serious in the former than in the latter cases.''

When the court convened on the day to which the hearing of the motion for a new trial had been regularly adjourned by Judge Cutler, he should, if not disqualified, have been present and heard and disposed of the same. The announcement made at the opening of the court by Judge Collingwood was, in effect, a statement that such disqualification existed. Defendant by his counsel might then have objected to submitting the motion to the court as then presided over by him. Had he done so, a different ques-

tion would be presented; one that we are not called upon to decide on this record. Not having done so, it may not now be urged on his behalf that the court was without jurisdiction to dispose of the matter then pending before it.

The rights of an accused incident to a criminal prosecution are largely for his benefit. The distinction between those that are jurisdictional and those in the nature of mere privileges are clearly pointed out by Judge Elliott in an article in 6 Criminal Law Magazine, pp. 182–190, as follows:

"Where the matter is jurisdictional and affects the public, no agreement of individuals should be allowed to alter it. The State has an interest in punishing the guilty for the good of society, as well as in protecting the innocent, and it would never do to permit an accused to select his own tribunal and be tried in his own way, by agreement with a careless or dishonest prosecutor. But where the right is solely for the benefit of the accused, and not jurisdictional, it is right, it is just, that a waiver of it by him of his own free will and desire, without solicitation or persuasion, causing some action to be taken, upon the faith of such waiver, that would not otherwise have been taken, should be binding upon him."

Notwithstanding the provision in our Constitution (article 2, § 16) that "No person shall be compelled in any criminal case to be a witness against himself," this court has held that this provision is in the nature of a personal privilege which may be waived by a defendant. And, if as a witness he testifies before a grand jury without objection, he will be deemed to have done so voluntarily. *People* v. *Lauder,* 82 Mich. 109, 119. By statute he is entitled to a preliminary examination, but he may waive it,

and such waiver may be had "when called upon to plead to the information, as well as when brought before the magistrate for examination." Wash-burn v. People, 10 Mich. 372, 383.

In Stephens v. People, 19 N. Y. 549, the jury in a capital case were permitted to separate during the taking of the testimony. The court said:

"This case is released from any difficulty of that kind by the admitted fact that such separation was by the consent of the plaintiff in error.　*　*　*　It is a general rule that voluntary consent will cure any error except one applicable to the jurisdiction of the court, or the organization of the jury.　*　*　*. 'He may waive any matter of form or substance, excepting only what may relate to the jurisdiction of the court.'"

The following authorities indicate the extent to which the doctrine of waiver has been applied in criminal cases:

"Such waiver may be express, or it may be by failure to make due objection and exception. The accused shall enjoy the right to be heard by himself and counsel; yet he need not have counsel unless he chooses, and need not say a word in his own defense; he may plead guilty, and thus waive every right conferred in the section. He may demand the nature and cause of the accusation against him; yet when arraigned he may waive the reading of the indictment or information. He has the right to meet the witnesses face to face; yet he may lawfully consent to the reading of depositions of absent witnesses in evidence. He is entitled to compulsory process to compel the attendance of his witnesses; yet he may not avail himself of such process. He is entitled to a speedy public trial; yet, with his consent, trial may be delayed for years, and no doubt

the public at large may properly be excluded from the trial at his request. He is entitled to a trial in the county or district previously ascertained by law wherein the offense was committed; yet he may have a change of venue, and, with his consent, the cause may be sent to some county or district and tried therein, hundreds of miles distant from that in which the crime was committed." *In re Staff,* 63 Wis. 285 (23 N. W. 587, 53 Am. Rep. 285).

"The Constitution of this State provides that 'in all criminal prosecutions   *   *   *   the accused shall have the right   *   *   *   to be confronted with the witnesses against him.' Article 1, § 10, Code, 770. In *State* v. *Polson,* 29 Iowa, 133, 'it was agreed in open court between the district attorney and counsel of defendant, in the presence of the defendant and of the jury, that in order to save time and facilitate the trial of the cause the testimony taken upon the former trial should be read to the jury as a substitute for the oral testimony of the witnesses in court.' A conviction followed, which was held to be right, and that the constitutional provision was a personal right, and in no manner affected the jurisdiction of the court, and that it might be waived." *State* v. *Kaufman,* 51 Iowa, 578, 582 (2 N. W. 275, 33 Am. Rep. 148).

"It is urged that it was error for Judge Scott to hear and dispose of the motion for new trial; that none other than the trial judge is competent to or can intelligently pass upon the questions raised by such motions. We will first notice the fact that no objection was made at the time to the hearing of the motion by Judge Scott, and there was no request or demand that Judge Norris be called upon to be present and hear the motion. From all that appears of record, the plaintiff in error was willing that the matter should be submitted to Judge Scott for his decision, and not having complained there, plaintiff in error should not be heard to object now." *Lauder* v. *State,* 50 Neb. 140 (69 N. W. 776).

"The trial of a felony which is interrupted by the sickness of the trial judge may validly proceed to a final determination before another judge of the same court who familiarizes himself with the record, when the accused (1) asks no continuance, (2) does not ask for the recall of the witnesses already examined, and (3) fully consents through his counsel that the trial shall so proceed." *State* v. *McCray,* 189 Iowa, 1239 (syllabus) (179 N. W. 627).

"He (defendant) may waive any matter of form or substance, excepting only what may relate to the jurisdiction of the court. A prisoner who defends by counsel, and silently acquiesces in what they agree to, is bound in the same manner as any other principal by the act of his agent." C. J. Shaw, in *Commonwealth* v. *Dailey,* 12 Cush. (Mass.) 80, 83.

And if Judge Collingwood could lawfully hear and deny the motion for a new trial, there would seem to be no doubt that he might proceed further in the case and impose sentence upon the defendant. *Meldrum* v. *United States,* 80 C. C. A. 545 (151 Fed. 177, 10 Ann. Cas. 324).

No objection was made by the defendant or his counsel when he was asked if he had anything to say why judgment should not be pronounced against him, and immediately thereafter an application to admit the defendant to bail was submitted to the court. We find no error in the proceeding there had.

It therefore becomes necessary to consider the errors alleged to have been committed on the trial, and whether or not the motion for a new trial was properly denied.

It is urged that the jury were influenced in arriving at their verdict by the remarks of the trial court "emphasizing the cost of another trial to the taxpayers of the county." In cautioning the jury,

when they were first permitted to separate after being sworn, that they must not permit any person to talk to them about the case, he said:

"You may be instrumental, if you do, in getting a mistrial of this case, which would cost this county several thousand dollars, so I want to say to you, you must be particular about that."

Again, in ruling that the prosecution must call a certain witness, he said:

"I don't want to try this case for a week, at an expense of several thousand dollars on some fluke like that, and then have this case reversed and then have the taxpayer pay another thousand, or two or three thousand dollars to try this case again."

While the expense of properly conducting a criminal trial should never be considered by the court or jury, we cannot say that these remarks influenced the jury in the verdict rendered. Had they been impressed thereby, a verdict of not guilty at their hands would surely have put an end to all such expense. The affidavit of the juryman relating thereto cannot be considered. *Beaubien* v. *Railway*, 216 Mich. 391.

We find no error in admitting the proof that the property burned was insured, and of defendant's financial condition at that time, as bearing on the motive which induced him to have the fire set.

George Mead was a witness for the prosecution on the former trial. At the opening of this trial, and again later, the prosecutor asked to have his name stricken from the information. The motion was denied on the insistence of the defense that he was a *res gestæ* witness. It was claimed that he had at one time made a written statement to one of the officials (Mr. Mehrtens) investigating the cause of

the fire, connecting the defendant with it, but subsequently made denial thereof. He was called by the prosecution. The defense examined him at length, and 'got before the jury his testimony that the written statement he had given to the official was not true. Cornelius and Plumb were then in jail. He was then asked:

"*Q.* I will ask you, from what Mr. Mehrtens said to you, were you given to understand that unless you signed these papers you would be put in there with them?

"*Mr. Savidge:* I object to that as calling for a conclusion.

"*Mr. Penny:* It is cross-examination.

"*Mr. Savidge:* It doesn't permit him to testify to conclusions.

"*Mr. Penny:* Yes, I guess so.

"*The Court:* You may answer.

"*A.* Not exactly like that.

"*Q.* Is that what you feared?

"*A.* Yes, sir.

"*Q.* That unless you gave them such a statement as they wanted, you would be put in jail?

"*The Court:* I want to reverse that ruling: You may express what they said, you may not express a conclusion. You may ask what was said, and relate the conversation.

"*Mr. Savidge:* I ask that the last two answers be stricken out.

"*The Court:* Strike it out. Proceed.

"*Q.* Just to clear it up, I will ask you here what they said to you, that is, Mehrtens and the officer, and if you, from what they said, was given to understand that unless you signed these statements, that you would go to jail?

"*Mr. Savidge:* Same objection.

"*The Court:* I will sustain the objection. You may relate what they said to you, and what he said to them."

The ruling of the court presents no reversible error. It clearly appears that he then claimed he signed the written statement through fear of arrest.

The charge of the court very clearly and fairly instructed the jury as to the issues presented and the law applicable thereto. We find no reversible error therein.

We find no abuse of discretion in the denial of the motion for a new trial because of the conflicting statements made by Cornelius and Plumb. In an affidavit made by Cornelius on May 22d he stated:

"Deponent says that he told the truth as above stated about his connection with the said crime through the two trials of Sanford. Deponent says that when he and Howard arrived at the Osceola county jail for the second trial, on or about March 27th, they found in the same cell block with themselves a man by the name of Tom Hudson. That the said Hudson questioned them about whether they were guilty or not of arson and told them that he didn't believe Sanford was guilty and further stated that he, Hudson, was for Sanford. That after the verdict in the second trial the said Hudson suggested to deponent and Howard that they send for the sheriff and tell the sheriff that they weren't guilty, and that they would probably get out. Further, that if the boys stuck to that story he would see that they would get out and that Sanford would spend all his money to get them out.

"Deponent says that because of Hudson's representations and because of the fact he did not want to go back to the Ionia reformatory, if it could be avoided, he sent for Sheriff Lindell and told Lindell he was innocent and that Howard Plumb then did the same."

The statements exonerating defendant were made on April 15th. Plumb made affidavit to the same effect as that of Cornelius. He also stated therein:

"Deponent says that on the morning of April 16th, Sheriff Lindell came to the cell block and addressed Cornelius and deponent in the following way: He said, 'You crazy fools, why didn't you stick? You had them coming last night. You could have gone home this morning. That they was going over this morning and have it thrown out of court.'

"Deponent says that again to satisfy Lloyd, this deponent made a retraction or a partial retraction on the 16th of April and another on the 17th of April; that on the 16th of April deponent and said Lloyd Cornelius signed retractions which Prosecutor Umphrey had already prepared and brought out to the jail for signature. Deponent says it was solely because of Hudson and Lloyd Cornelius that this deponent made the above retraction, that the retractions were the untruth; that this present statement is made without any duress or force applied to deponent, that he has been offered no inducements or promises of any sort whatsoever."

There was denial of these statements in affidavits and testimony submitted on the motion, but we find none from Hudson.

The record has been examined with care, and in our opinion there was competent and material evidence to sustain the verdict, and the judgment should be, and it is, affirmed.

The conclusion reached renders it unnecessary to consider the objections of the prosecution to the settlement of the bill of exceptions.

WIEST, C. J., and BUTZEL, McDONALD, POTTER, NORTH, and FEAD, JJ., concurred. CLARK, J., did not sit.