STATE OF IOWA, Appellee, v. ROBERT LEEPER, Appellant.

CRIMINAL LAW: Accessories—Statute—Constitutionality. The statute which permits an accessory before the fact to be indicted, tried, and punished as a principal is constitutional.

HOMICIDE: Accessories—Evidence—Acts and Conduct of Actual Principal. The acts and conduct of the actual principal in the commission of a homicide, tending to show his guilt and that he did not act in self-defense, are admissible on the trial of an alleged aider and abettor, provided that the latter is first connected by *other* evidence with the offense, as an accessory.

HOMICIDE: Evidence—Possession of Weapons. On the trial of an indictment for murder by shooting, evidence is admissible tending to show the possession by the accused of a revolver, and his skill therewith.

HOMICIDE: Cross-Examination—Unlawful Possession of Weapon. A defendant in a charge of homicide by shooting who testifies as to carrying a revolver may, on cross-examination, be asked if he had a permit to carry such weapon; and especially so when the record contains testimony tending to show that the accused had threatened to shoot the deceased.

HOMICIDE: Evidence—Threats. Evidence tending to show that an accused in a charge of homicide had threatened to kill the deceased, is clearly admissible.

HOMICIDE: Self-Defense—Quarrelsome Nature of Deceased. Just what period of time may be covered by testimony tending to show

the reputation of the deceased for quarrelsomeness must rest quite largely in the discretion of the trial court.

**CRIMINAL LAW:** Evidence—Res Gestae. Evidence reviewed, and held to constitute part of the *res gestae*.

**HOMICIDE:** Self-Defense—Erroneous Instruction. It is error to instruct that a killing is justifiable only when it reasonably appears *to the jury* to be the only means of saving the life of the one assailed.

**HOMICIDE:** Self-Defense—Nonduty to Retreat. Instructions which impose on an accused the duty to retreat when assaulted in his own home constitute reversible error.

**WITNESSES:** Impeachment—Former Convictions—Instructions. The jury should be plainly told, when requested, that testimony tending to show that an accused had been convicted of a felony, or that a witness was of bad moral character, must be considered solely as bearing on the *credibility* of the party or witness in question.

Headnote 1: 16 C. J. p. 121; 31 C. J. p. 740. Headnote 2: 16 C. J. p. 145. Headnote 3: 30 C. J. p. 161. Headnote 4: 16 C. J. p. 601; 30 C. J. p. 160. Headnote 5: 30 C. J. p. 189. Headnote 6: 30 C. J. p. 234. Headnote 7: 16 C. J. p. 575. Headnote 8: 30 C. J. p. 379. Headnote 9: 30 C. J. pp. 373, 386. Headnote 10: 16 C. J. pp. 855, 856.

*Appeal from Johnson District Court.*—RALPH OTTO, Judge.

NOVEMBER 19, 1924.

REHEARING DENIED FEBRUARY 13, 1925.

DEFENDANT was jointly indicted with two others, charged with murder in the first degree. Upon a separate trial, a verdict of guilty was returned, fixing his punishment at life imprisonment. From a judgment upon the verdict, he appeals.— *Reversed and remanded.*

*W. M. Davis* and *J. M. Parsons,* for appellant.

*Ben J. Gibson,* Attorney-general, *Edward L. O'Connor,* County Attorney, and *Henry G. Walker,* Assistant County Attorney, for appellee.

VERMILION, J.—The indictment charges the appellant and two others, Mima Wertz and Beryl Leeper, with murder in the

first degree, committed by shooting Roy Wertz with a pistol.

1. CRIMINAL LAW: accessories: statute: constitutionality.
The defendant Mima Wertz was the wife of the deceased, and the defendant Beryl Leeper is the daughter of Roy and Mima Wertz and the wife of appellant. Appellant was separately tried.

A demurrer to the indictment raised the questions: (1) that the act charged could be committed by but one person; (2) that the indictment failed to distinguish between the principal and the accessories; and (3) that Section 5299 of the Code of 1897 is unconstitutional. That section is as follows:

"The distinction between an accessory before the fact and a principal is abrogated, and all persons concerned in the commission of a public offense, whether they directly commit the act constituting the offense, or aid and abet its commission, though not present, must hereafter be indicted, tried and punished as principals."

The constitutionality of this section has been recently upheld by this court, as against the attack here made upon it. *State v. Burch,* 199 Iowa 221. There is no occasion to add anything to what is there said.

Aside from the constitutional question, the sufficiency of the indictment, and the propriety and correctness of instructions permitting the jury to find the defendant guilty, if he aided and abetted the commission of the offense, cannot be doubted. The uniform holdings of this court have been against the contention of the appellant on these questions.

Two or more persons may be indicted for a crime that, from its nature, can only be committed by one person. *State v. Comstock,* 46 Iowa 265; *State v. Berger,* 121 Iowa 581; *State v. McAninch,* 172 Iowa 96; *State v. Farris,* 189 Iowa 505. Where the indictment charges the defendant as a principal, he may be convicted on proof that he aided and abetted the commission of the crime. *Bonsell v. United States,* 1 G. Greene 111; *State v. Brown,* 25 Iowa 561; *State v. Hessian,* 58 Iowa 68; *State v. Pugsley,* 75 Iowa 742; *State v. Munchrath,* 78 Iowa 268, 274; *State v. Berger,* supra; *State v. Meyer,* 180 Iowa 210; *State v. McCray,* 189 Iowa 1239; *State v. Farris,* supra; *State v. Weeks,* 193 Iowa 1024; *State v. Burch,* 195 Iowa 427; *State v. King,* 198 Iowa 325. Where two or more are jointly indicted, and the evi-

dence shows that they were acting together in the commission of the crime, the State is not bound to show which one actually committed the act. *State v. Zeibart*, 40 : Iowa 169; *State v. McCray*, 189 Iowa 1239.

The demurrer to the indictment was properly overruled; there was no variance between the indictment and the proof; and it was not error to instruct the jury that the defendant might be found guilty if he fired the fatal shot, or if he aided and abetted one of those jointly indicted with him in the commission of the crime.

Certain facts are not in dispute. Roy Wertz, the deceased, and Mima Wertz, a codefendant with appellant, had been married and divorced and remarried. Beryl Leeper, the other defendant in the indictment, their daughter, was born during the first marriage. After the divorce, Wertz had married Agnes Kuntz, who had died, leaving him some property, before the second marriage of deceased and Mima Wertz. The family, consisting of Wertz, his wife, and his daughter, lived, at the time of the homicide, in Iowa City, in a house that formed a part of the property so derived. They kept roomers, some students and others, who lived in the upper story. Wertz had no particular occupation, but spent much of his time at various clubs, and was addicted to drink. The appellant had been a student at the state university, and in September before the killing, he and the daughter Beryl had been married in Chicago. On their return to Iowa City, they continued to live for much of the time as before, although he was at the Wertz house frequently, and spent some nights there. It seems to be a matter of controversy to what extent this marriage was kept secret. Mrs. Wertz knew of and approved it. There is some dispute as to whether deceased knew of the marriage. But it is undisputed that, in July preceding the killing, Wertz had insisted that the marriage take place at once, and had caused the arrest of the appellant. The latter was detained in custody only a short time, and no charge was filed against him.

For some days preceding the killing, which occurred on December 27, 1922, Mrs. Wertz had been visiting at Dolliver, Iowa; and the students rooming at the house were away. There were living in the house at that time, in addition to the family,

Mr. and Mrs. Steinmetz and a Miss Moorehead. On the morning of the day preceding the tragedy, Wertz found the appellant and Beryl occupying a bed in the house, and ordered them to leave. They went to Cedar Rapids, and from there telephoned Mrs. Wertz at Dolliver. She came to Cedar Rapids that night, and the three spent the night at a hotel. On that night, the deceased entertained a party of men in the dining room of the home, drinking and gambling. The party broke up and the guests departed about 9:30 on the morning of December 27th. Appellant, his wife, and his mother-in-law returned to Iowa City on that morning on an interurban car, arriving there at 10:10 o'clock. They went together to the Wertz home. Between 10 and 10:30 o'clock, Dr. Bennett received a telephone call from Beryl to come to the house. He went to the Wertz home in response to the call, arriving there in the neighborhood of 10:30 A. M. The appellant, his wife Beryl, and Mrs. Wertz were there; and Roy Wertz, dressed in a nightshirt, was lying on the floor in the kitchen, unconscious and bleeding, and with two bullet wounds in his head. One bullet had entered about two inches in front of the ear, and came out about an inch back of the ear, passing only through fleshy tissue; the other entered in the vicinity of the temple, and came out at the back of the head, passing through the brain and causing a fracture of the skull. The bullets were fired from an automatic pistol belonging to Wertz. It was found on the premises after the shooting. Wertz died shortly after noon of the same day.

Briefly stated, the contention of the appellant is that, when he and his codefendants entered the house, Wertz was in bed; that the appellant went to the basement, to attend to the furnace; that Wertz first made an unprovoked attack upon Mrs. Wertz; that the daughter interfered, and he attacked her; that he threatened to kill them both, and was reaching for a gun standing in the corner of the kitchen, when Mrs. Wertz obtained the pistol from the drawer of a washstand in the kitchen, and shot him; that he fell, and remained in the southeast corner of the kitchen until removed to a bed by Dr. Bennett and appellant. Mrs. Wertz and Beryl both testified that Wertz met his death substantially in this way. The appellant testified that he heard shots while he was in the basement, and on coming upstairs into

the kitchen, found the deceased lying in the southeast corner of the room.

The State produced no witnesses who saw the killing. Its case is based entirely on circumstantial evidence. Its contention is that the position of Wertz when Dr. Bennett arrived, the location and character of the wounds, the location of certain marks upon the walls, claimed to have been made by the bullets after passing through the head of Wertz, and the location of bloodstains on the floor and objects in the room, show that Wertz was not shot in the manner or under the circumstances claimed by appellant; but that, after he received a flesh wound in the face while standing, the fatal shot was fired when he was in a sitting posture on the floor, at a point some distance from where he was when the first wound was inflicted, and at some interval of time thereafter; and that the shots were fired from the vicinity of the door leading from the kitchen to the basement. Certain statements alleged to have been made by appellant, and by Beryl in his presence, or as a part of the *res gestae,* are relied upon to support this view. There was testimony tending to show a state of ill feeling on the part of appellant toward Wertz; that he had threatened "to get even with him," after his arrest on complaint of Wertz. One witness, Barth, testified, in substance, that appellant told him that he had a chance to make $20,000 by marrying Beryl and killing Wertz; that he could kill him in different ways,—by putting poison in his liquor, or taking him up the river; that he was afraid some of his friends might get the poison; and that, if he took Wertz up the river, he would be missed in a short time; that he could get a gun with a silencer on it; that Mrs. Wertz would take the whole blame for this; that "the girl and them had talked this over." Another witness, Johnson, testified that appellant told him that there were different ways he might "knock him [Wertz] off," and Mrs. Wertz would take the blame for it as self-defense, under one or two of these ways; that one way was to use a hypodermic needle and inject air in an artery or vein, and another was to use a silencer and shoot him when he came home, and take him in his own car to Cedar Rapids, weight the body, and throw it in the river. There was also testimony tending to show that the deceased was an expert marksman, and

familiar with the automatic pistol belonging to Wertz with which the shots were fired, and that he had carried it. One witness, who lived in the Wertz home and was familiar with the kitchen, testified that she had never seen the pistol there, and that appellant told her to say that she had seen it in the drawer where Mrs. Wertz claimed to have found it. ˋ

We have not attempted to set out the testimony in detail, nor to refer to all of the circumstances shown in evidence, but have recited only such of the facts and testimony as are necessary to an intelligent understanding of the propositions which we deem of controlling importance.

Many errors are assigned on the admission and exclusion of testimony. In view of the conclusion we feel constrained to reach upon another branch of the case, we shall consider only such questions in this connection as seem likely to arise upon a retrial.

Error is assigned on the admission of testimony relating to statements made by Mrs. Wertz at Dolliver, at the time the defendant talked to her by telephone from Cedar Rapids, the night before the killing. The objections went to testimony that she said she was talking to Bob; that Bob was Beryl's fellow; that she did not say that Beryl and appellant were married; that she cried, and said that Roy was drinking hard and his heart was bad and they might hear of his sudden death. There was no error in the admission of this testimony. Upon the theory that appellant aided and abetted Mrs. Wertz to commit the crime, where there was other evidence tending to connect appellant with the crime as an instigator or accessory before the fact,—as there was in this case, in his own declarations,— her acts and declarations tending to show her guilt, and that she did not act in defense of herself or her daughter, might be shown. *State v. Brown,* 130 Iowa 57; *Mulligan v. People,* 68 Colo. 17 (189 Pac. 5); 16 Corpus Juris 144. Moreover, in the instructions to the jury, the court carefully limited the effect of this testimony, and said that acts or declarations of Mrs. Wertz or Beryl not in the presence of the appellant could not be considered in determining his guilt, but could be considered in determining whether either of them fired the fatal shot.

2. HOMICIDE: accessories: evidence: acts and conduct of actual principal.

Numerous errors are assigned on the admission of testimony tending to show that appellant, previous to the killing, had a revolver in his possession, and that he was an expert

3. HOMICIDE: evidence: possession of weapons.

marksman, and on the admission of his statements in reference to his skill in that respect. Without extending this opinion by referring to the testimony in detail, it will suffice to say that no prejudicial error was committed here. 30 Corpus Juris 161, and cases there cited; *State v. Weems,* 96 Iowa 426; *People v. McGuire,* 135 N. Y. 639 (32 N. E. 146).

The appellant was asked, on cross-examination, if he had a permit to carry concealed weapons, and, over objection, answered that he had not. The question was in connection with

4. HOMICIDE: cross-examination: unlawful possession of weapon.

his testimony as to carrying the pistol with which Wertz was shot. He admitted having it on two or three occasions. In view of the testimony tending to show declarations on his part, made some months before the killing, of a purpose to shoot Wertz, we think the question not improper. Deliberation, premeditation, and malice aforethought were essential elements of the crime for which he was on trial. The fact that he carried such a weapon secretly, and without securing authority to do so, had some bearing on his intent; and the mere fact that the carrying of the pistol concealed, without a permit to do so, constituted, in and of itself, a separate offense, would not render the testimony inadmissible for that purpose. *State v. Levich,* 128 Iowa 372. In *People v. Doud,* 223 Mich. 120 (193 N. W. 884), relied upon by appellant in this connection, there was no question of intent.

Complaint is made that witnesses for the State who were at the house shortly after the shooting were not permitted, on cross-examination, to testify as to Mrs. Wertz's condition, what she was doing, and what she said. The questions asked were not proper cross-examination, and answers were properly not permitted.

Error is assigned on the refusal of the court to allow a witness for the appellant to testify to statements alleged to have been made by appellant and his codefendants after the shooting. The questions clearly called for self-serving declarations or

hearsay testimony, and the statements were not so closely related to the killing in point of time or circumstances as to require their admission as a part of the *res gestae*. They were made after a doctor and an attorney had been called to the house by the defendants. The objections were properly sustained.

The admission of the testimony of the witness Barth is assigned as error. A reference to the testimony of this witness as partially set out above should be sufficient, without argument or citation of authorities, to show the correctness of the ruling. The same may be said of alleged errors predicated on the admission of testimony relating to other threats made by appellant. It is said that the testimony of Barth was an attempt to establish a conspiracy by the declarations of a coconspirator. The court did not submit the case to the jury upon the theory of a conspiracy, as, we think, might properly have been done. But, aside from that, the testimony in question related to declarations of the defendant on trial, not of a coconspirator with him. It is competent to establish the existence of a conspiracy, as against the one on trial, by proof of his own declarations. *State v. Caine*, 134 Iowa 147.

5. HOMICIDE: evidence: threats.

The deceased had lived in Iowa City since 1909. Following his first marriage with the defendant Mima Wertz in 1897, they had lived in Emmet County for a time. Appellant introduced evidence of the general reputation of the deceased in Iowa City as to his being a quarrelsome man, and offered testimony as to his reputation in that respect in Emmet County, to which objection was sustained on the ground that it was immaterial and too remote. If the deceased had the reputation of being a quarrelsome man, that was a fact proper to be considered by the jury in determining whether Mrs. Wertz, if she fired the fatal shot, acted in justifiable defense of herself or her daughter, in view of any knowledge she may have had of such reputation, and also upon the question whether deceased was the aggressor. No precise limit can be set to the period that may be covered by such an inquiry; it must obviously depend on the circumstances of the particular case; and the court has some discretion in the mat-

6. HOMICIDE: self-defense: quarrelsome nature of deceased.

ter, to be exercised, of course, with a due regard to the rights of a defendant. In view of the intimacy of the relationship between Mrs. Wertz and the deceased, and the fact that it had existed during the time covered by the offered testimony, and that she testified to a knowledge of his violent disposition during that time, we would have looked with greater favor upon a more liberal exercise of discretion on the part of the court. The testimony might well have been admitted, though we would hesitate to reverse for that reason alone.

There was no error in permitting Mrs. Steinmetz, who was in the upper story of the Wertz house, to testify that she heard cries in the lower part of the house about 10:30 on the morning of the shooting; that she went part way downstairs, and called Beryl, who answered: "I am all right. Go back upstairs." It was clearly a part of the *res gestae*, and it would seem, from all the testimony, that the statement was made in the presence of the appellant.

**7. CRIMINAL LAW: evidence: *res gestae*.**

The testimony of the witness Johnson, though admissible in chief, was given in rebuttal. While we would not reverse for this, a like situation should not arise on a retrial.

The other errors assigned on the admission and exclusion of the testimony have been examined, and no prejudicial error found. In some instances the testimony objected to was subsequently stricken from the record, and the jury specifically instructed not to consider it.

The court instructed the jury that the killing of an assailant is excusable on the ground of self-defense only when it is, or reasonably appears to be, the only means of saving one's life or preventing some great bodily injury; and that, if the danger which appears to be imminent can be avoided in any other way, the taking of the life of the assailant is not excusable. The instruction is incorrect as an abstract proposition, in that it states that a killing is justifiable only when it reasonably appears—that is, to the jury considering the facts—to be the only means of saving the life of the one assaulted. It is undoubtedly the law that one unlawfully assailed is justified in defending himself, even to the extent of taking the life of his assailant, when it appears to him, as a reasonable man, under the circumstances, to be the only means

**8. HOMICIDE: self-defense: erroneous instruction.**

of protecting his life or his person from great harm. While some of the other instructions are open to the same criticism, we might be inclined to say, in view of other portions of the charge where the law is correctly stated, not merely as an abstraction, but as applied to the particular facts of the case, that the error in this respect was not prejudicial.

The instruction under consideration is, however, clearly erroneous in another respect, when applied to the situation of Mrs. Wertz; and nothing is to be found elsewhere in the instructions from which it can be said that prejudice did not result. The language of the instruction is that the killing of an assailant is excusable only when it appears to be the *only* means of saving the life or protecting the person of the one assaulted, and when the apparent danger can be avoided in *no other way*. This clearly puts upon the one assailed the duty to adopt any and every reasonable means of escape, including retreat, before taking the life of the assailant. That this is the general rule may be conceded; but it is well settled that it is not applicable under all circumstances. *State v. Borwick,* 193 Iowa 639. It is universally recognized that one assaulted in his own dwelling, under such circumstances as to create in him, as a reasonable man, a justifiable belief that his life is in danger, or that he will sustain a great bodily injury, is not bound to retreat before killing his assailant. *State v. Bennett,* 128 Iowa 713; *State v. Rutledge,* 135 Iowa 581; *State v. Cessna,* 170 Iowa 726; *State v. Dyer,* 147 Iowa 217; 30 Corpus Juris 71, and cases there cited. And the fact that the assailant is also an occupant of the home, with an equal right there, does not put upon the one assaulted any duty to retreat. *State v. Gough,* 187 Iowa 363; *Jones v. State,* 76 Ala. 8; *People v. Tomlins,* 213 N. Y. 240 (107 N. E. 496). Appellant requested an instruction to the effect that Mrs. Wertz, being in her home, was not bound to retreat. It was not given, nor, as has been said, was the law applicable to that situation given to the jury in any of the instructions given by the court.

One theory on the part of the State was that appellant aided and abetted Mrs. Wertz in the killing of her husband. She testified that she fired the fatal shot. The court correctly instructed, in substance, that, if the jury found that Mrs. Wertz

*Note in margin:* 9. HOMICIDE: self-defense: nonduty to retreat.

killed the deceased, it must be further established beyond a reasonable doubt that she did not do so in justifiable self-defense, before the appellant could be convicted as an aider or abettor. It was the claim of appellant that Wertz had ordered her to leave the house, and immediately made a violent attack upon her, and was reaching for a gun and threatening to kill her when she shot him. The instruction complained of clearly put upon her the duty to retreat, when so assailed in her own dwelling house; and this she was not required by the law to do; but she had the right there to stand her ground, and to use such means as appeared reasonably necessary to her, acting as a reasonable person, to preserve her life or protect her person from great harm, even to the extent of taking the life of her assailant. The instruction was erroneous and prejudicial.

The appellant testified, on cross-examination, that he had previously been convicted of a felony. An instruction was asked to the effect that that fact was no evidence that he was guilty of the crime charged. There was also testimony to the effect that the general reputation of Beryl for general moral character was bad. The court gave an instruction on the subject of the impeachment of witnesses by proof of contradictory statements, but made no reference to the effect of a previous conviction of a felony or to proof of bad general moral character as affecting the credibility of a witness. We think that, in view of the instruction on the subject of impeachment, the jury should have been fully instructed on the subject, and told that appellant's previous conviction could only be considered as affecting his credibility as a witness; or that, in the absence of such an instruction, the thought of the requested instruction should have been given. In connection with what was said on the subject of impeachment, the jury should also have been instructed as to the purpose for which the testimony as to Beryl's general moral character should be considered. *State v. Rutledge,* supra.

Many other instructions are criticized. In some instances the criticisms are meritorious, if a single instruction or part of an instruction be considered, standing alone; but, when considered in connection with the rest of the charge, as they must be, we think no prejudice resulted. In an instruction defining

10. WITNESSES: impeachment: former convictions: instructions.

murder in the first degree, the court said that premeditation or deliberation must be present; but, in stating what must be established, to warrant a verdict of murder in the first degree, the court correctly said that both premeditation and deliberation must be shown. In defining malice aforethought, there was some confusion of statement, in that the idea of deliberation expressed in the word "aforethought" alone was seemingly made to apply as a definition of the whole expression; but a further definition of the word "malice" in the same instruction so presented the matter that it could not, we think, have misled the jury.

The objections to many of the other instructions are hyper-critical. No other prejudicial error is found.

Some of the instructions requested by appellant were properly refused because, although they were correct in other respects, they required a finding that appellant fired the fatal shot, before he could be convicted, and in effect excluded from the consideration of the jury the claim that he aided and abetted Mrs. Wertz in so doing. In other instances the subject was covered by the instructions given. Save in the respect noted, we find no error in refusing the instructions asked.

It is insisted that the evidence was insufficient to sustain the verdict, and that the court erred in submitting the case to the jury. Because of the necessity for a reversal upon other grounds, and in view of a retrial, upon which the evidence may not be the same, we have no occasion to consider these questions.

For the reasons pointed out, the judgment is reversed and the cause is remanded.—*Reversed and remanded.*

ARTHUR, C. J., and EVANS and STEVENS, JJ., concur.