STATE OF IOWA, Appellee, v. GUY JESS HALL, Appellant.

No. 46351.

OCTOBER 19, 1943.

R. E. Hanke, of Des Moines, for appellant.

John M. Rankin, Attorney General, and Don Hise, Assistant Attorney General, for appellee.

MILLER, J.— This cause has been submitted to this court on the clerk's transcript of the record pursuant to sections 13998 and 14010, Code, 1939. Examination of the record, as shown by the clerk's transcript alone, discloses no error which would warrant or require a reversal. The clerk's transcript includes a motion for new trial, which in turn refers to the evidence in the case. Without the evidence before us we are unable to determine whether there is any merit in certain contentions there made. State v. Evans, 229 Iowa 932, 937, 295 N. W. 433. The reporter's transcript of the testimony has been certified to supply such deficiency. As pointed out in State v. Dunley, 227 Iowa 1085, 290 N. W. 41, and State v. Evans, supra, the failure of appellant to file an abstract of the evidence has forfeited his right to have the evidence reviewed by us. However, in State v. Ferguson, 233 Iowa 354, 6 N. W. 2d 856, 858, in a somewhat similar situation where the right to file an abstract had been lost, this court, on its own motion and without setting a precedent, examined the transcript of the testimony which had been certified to us. Such examination was made as a matter of grace, not of right. In the same spirit, we have examined the transcript of the testimony herein.

Guilt of defendant is asserted by reason of an automobile accident which occurred about 8:10 p. m., September 26, 1942, at the intersection of Southeast First Street and Jackson Avenue in Des Moines, Iowa. At this intersection First Street is a through highway extending north and south. East-and-west traffic on Jackson Avenue is required to stop before entering the

intersection. Defendant was driving an automobile south on First Street and collided with an automobile operated by Roy Garlick proceeding east on Jackson. After the collision, Garlick's car was stopped in the intersection; defendant's car had continued south over the curbing, turned over on its side, and soon caught fire and burned up. Mrs. Marie Ellen Barlow had been standing in the parking near the sidewalk at the southeast corner of the intersection, waiting for a bus. She was struck by defendant's car and was fatally injured.

There are a number of sharp conflicts in the evidence. According to defendant's testimony, he was driving at a speed of twenty-five to thirty miles per hour as he approached the intersection; he saw Garlick's car approaching from the west; it seemed to slow down as though it were going to stop; defendant thought it would stop for the stop sign but it did not; defendant speeded up, swung to the left, thought he could avoid a collision but did not. He testified that he may have been traveling forty miles per hour when the crash occurred. The physical facts were such that the jury might have found that defendant's speed was more than forty miles per hour. Davidson v. Vast, 233 Iowa 534, 10 N. W. 2d 12.

The evidence offered by the State shows that First Street is thirty-six feet wide north of Jackson and twenty-four feet wide south of Jackson, so that on the east side of First Street there is an offset of about six feet as the street narrows to the south of the intersection. The State's evidence indicated that the collision occurred not more than ten feet west of the east curbing of First Street as extended from the southeast corner of the intersection. There was also testimony that the front end of Garlick's car was approximately even with the east curb of First Street, as it extends south of the intersection, when the impact occurred. Defendant's car was shown to have turned completely around so that it came to rest on its side headed practically due north with its front end about forty-four feet from the curbing at the southeast corner of the intersection. Mr. Barlow, who had been standing beside his wife, and Mr. and Mrs. Garlick all testified that Garlick's car came to a complete stop at the stop sign about twenty-four feet west of the intersection and then proceeded in low gear at about five miles per hour until the impact occurred.

Defendant did not claim to have sounded his horn or to have given any warning.· Mr. and Mrs. Garlick and Mr. and Mrs. Barlow are shown to have been unaware of defendant's approaching car until a collision was imminent. Defendant did not apply his brakes; instead he speeded up, swerved to the left, then, seeing the offset which narrowed the street, swung back to the right as the collision occurred. There was evidence that the speed limit was twenty-five miles per hour at this intersection.

There was other evidence, of course, but the foregoing summary presents the high lights from which the general situation may be understood. Defendant made no motion for a directed verdict and we do not find any assertion in the motion for new trial which might be interpreted as challenging the sufficiency of the evidence to present a jury question as to defendant's guilt.

I. The motion for new trial asserts that the court erred in requiring defendant and the witness Bledsoe, who testified that he was riding with defendant at the time of the collision, to state on cross-examination the number of times each had been convicted of felonies. On direct examination defendant testified that he had been convicted of a felony. On cross-examination the State inquired concerning the number of convictions. Strenuous objections were made. At first the objections were sustained. Later, when the question was again put, the objections were overruled and defendant testified, "four times." Bledsoe, on direct examination, testified that he had been convicted of a felony. On cross-examination, objection being overruled, he testified, "twice." The testimony was properly admitted.

Section 11270, Code, 1939, provides:

"A witness may be interrogated as to his previous conviction for a felony."

In State v. Williams, 197 Iowa 813, 819, 197 N. W. 991, 994, the defendant was asked if he had been convicted of a felony and he said that he had. He was then asked how many times. In affirming the conviction, we state:

"The State had a right to show, for the purpose of affecting his credibility, that he had been so convicted, and how many times * * *."

As far as we have been able to discover, this appears to be the only decision of this court passing upon this precise question. We adhere to the position thus taken.

II. The motion for new trial challenges the instructions as not submitting defendant's theory of the case. Defendant contends that, under the evidence submitted by him, the jury was warranted in finding that an emergency was created by Garlick's failure to stop before entering the intersection, that defendant had a right to rely on his right of way and on Garlick's duty to maintain proper lookout and yield such right of way, and that the failure of the court to specifically cover such matters in its instructions led the jury to believe that they did not enter into the matter for consideration. We find no merit in the contention.

Instruction 3 advised the jury that defendant was charged with involuntary manslaughter and defined it as "the unintentional killing of a human being by another person while such other person is in the performance of a lawful act, by performing the same in such a manner as to show a wanton and reckless disregard and indifference for the lives or safety of other persons who might reasonably be expected to be injured thereby." In instruction 4, the court defined criminal negligence as follows: "Negligence, to become criminal, must be reckless and wanton and of such a character as shows an utter disregard of the safety of others who might reasonably be expected under the circumstances to be injured thereby." Instruction 6 advised the jury that, before they could convict, the State was required to prove beyond a reasonable doubt that defendant was guilty of criminal negligence which was the proximate cause of Mrs. Barlow's death. Instruction 7 advised the jury in two places that, for defendant to be guilty of criminal negligence, it was necessary to find that he acted "in such a manner as to show a wanton and reckless disregard for the safety of other persons whom he in reason ought to have known might be affected thereby." Instruction 11 advised the jury that negligence of Garlick would not "relieve the defendant of criminal responsibility if the death of said deceased was naturally and proximately caused by the doing by the defendant of an unlawful act or acts as hereinbefore defined, in such a manner as to show a wanton and reckless disregard and indifference to the safety of others who might be reason-

ably expected to be injured thereby." The instructions given, in the absence of specific request, adequately advised the jury of the law applicable herein. State v. Graff, 228 Iowa 159, 290 N. W. 97, and cases cited therein.

■ III. The motion for new trial complains of the fact that the policeman, Anderson, was permitted to read his testimony before the grand jury. Anderson had testified that defendant made certain admissions to him at the scene of the collision. On cross-examination, counsel sought to discredit his testimony by reason of his not having so testified before the grand jury. On redirect examination the minutes of his testimony were read, over objection. The court promptly admonished the jury not to consider any part of the minutes except that which related to conversations with defendant. Motion was made to strike all other parts thereof and was sustained with a reiteration of the court's admonition. Later defendant offered Anderson's notes of his investigation in their entirety. While the evidence as originally introduced was largely inadmissible, nevertheless, in view of the court's admonitions, the ruling on the motion to strike, the subsequent introduction by defendant of the officer's complete report of his investigation, and the fact that all matters, which may have been hearsay, were shown by competent evidence, we are unable to find such prejudice as would warrant or require a reversal herein. Ceretti v. Des Moines Ry. Co., 228 Iowa 548, 551, 293 N. W. 45; State v. Rozeboom, 145 Iowa 620, 624, 124 N. W. 783, 785, 29 L.R.A., N. S., 37.

■ IV. Exception is taken to the court's definition of criminal negligence. The complaint is that, in addition to the elements of wanton and reckless disregard and indifference for the lives and safety of others, there should have been added proof of no care. We think that the definition given was sufficient. State v. Graff, supra.

Other matters presented by the motion for new trial do not appear to require elaboration. We have carefully examined the record. We find nothing which would warrant or require a reversal.

The judgment is—Affirmed.

All JUSTICES concur.