STATE OF IOWA, Appellee, v. CLARENCE WILSON, Appellant.

No. 46341.

April 4, 1944.

Opinion on Rehearing January 9, 1945.

Frank R. Talbott, of Brooklyn, H. S. Life, and McCoy & McCoy, all of Oskaloosa, for appellant.

John M. Rankin, Attorney General, Wm. F. McFarlin, Assistant Attorney General, L. R. Carson, County Attorney, and William M. Spencer, Special Assistant Attorney, for appellee.

Garfield, J.—This opinion is substituted for an earlier one reported in 13 N. W. 2d 705, which was withdrawn and a rehearing granted on September 23, 1944.

This defendant (Clarence Wilson) and his two brothers, Glenn and Albert, were jointly indicted as principals for the murder of Harry Bolden. A separate trial was granted to each. It is the State's theory that Glenn killed Bolden by striking him with a club while Clarence and Albert were present aiding and abetting by holding Bolden. The killing followed a drinking party in which an argument arose that in turn led to the fight. The Glenn Wilson case is reported in 234 Iowa 60, 11 N. W. 2d 737, where the evidence upon the trial of Glenn is fully set out.

I. Error is claimed in the overruling of defendant's motion to set aside the indictment based on the exclusion of women from the list of names from which the grand jury was chosen. The clear trend of the decisions is that, so long as no names are placed upon the lists that could not properly be included and no class of persons is excluded to the defendant's prejudice, there is no ground for questioning the indictment. State v. Sangster, 196 Iowa 495, 496, 497, 192 N. W. 155, and cases cited; 38 C. J. S. 1003, section 12. Further, the inclination is to hold that only those persons may object to the exclusion of members of a race or class from the grand jury who are

540

members of the race or class which has been excluded. Thus a man may not complain of the unlawful exclusion of women from the grand jury. 24 Am. Jur. 852, 853, section 28; annotation 82 L. Ed. 1053, 1064; Petition of Salen, 231 Wis. 489, 286 N. W. 5. See, also, 38 C. J. S. 1003, section 12. We conclude this defendant was not prejudiced by the exclusion of women from the list from which the grand jury was drawn and this assignment of error is without merit.

II. Over defendant's objections, four peace officers testified to oral declarations and a written statement made by Glenn Wilson, not in Clarence's presence, the day after the killing. The written statement contains a recital of the events leading up to the fatal blow and an admission that Glenn struck Bolden on the head with a stick. The State, in an attempt to justify the admission of this evidence, invokes a rule which prevailed at common law that upon the trial of an accessory guilt of the principal could be proven by any evidence which was admissible against the latter. The contention cannot be sustained. The admission of this evidence was prejudicial error. The common-law rule is not applicable here, even without considering section 12895, Code, 1939, which provides that the distinction between an accessory before the fact and a principal is abrogated, and all persons concerned in the commission of an offense must be indicted, tried, and punished as principals.

At common law the principal in the first degree was the actual perpetrator of the crime. A principal in the second degree was one who was present, actually or constructively, aiding and abetting the act. 1 Wharton's Criminal Law, Twelfth Ed., 325, 327, 328, sections 240, 245; 40 C. J. S. 836, sections 8, 9; 26 Am. Jur. 197, section 57; 33 Words and Phrases, Perm. Ed., 615. An accessory before the fact, at common law, was not actually or constructively present at the commission of the crime but procured, counseled, or commanded another to commit it. 40 C. J. S. 836, section 9; 1 Words and Phrases, Perm. Ed., 246–248. At common law the confession of the principal was admissible on the trial of the accessory, to prove the commission of the crime by the principal, provided some evidence of the defendant's co-operation was first furnished. IV Wigmore

on Evidence, Third Ed., 133, section 1079(c); Mulligan v. People, 68 Colo. 17, 189 P. 5, 9.

The basis for this rule of evidence was that in order to convict the accessory at common law guilt of the principal must first be proven; guilt of the accessory depended on guilt of the principal; the acquittal of the principal entitled the accessory to his discharge. Indeed, at common law, an accessory could be tried with the principal or separately after the latter's conviction, but he could not, except with his consent, be tried before the principal. State v. Lee, 91 Iowa 499, 501, 60 N. W. 119; Gibson v. State, 53 Tex. Crim. Rep. 349, 110 S. W. 41; Rawlins v. State, 124 Ga. 31, 52 S. E. 1, 12 [affirmed 201 U. S. 638, 26 S. Ct. 560, 50 L. Ed. 899]; Ex parte Bowen, 25 Fla. 214, 6 So. 65; 1 Bishop on Criminal Law, Ninth Ed., 482, section 667; 1 Wharton's Criminal Law, Twelfth Ed., 364, section 277.

But even at common law this defendant was not a mere accessory but a principal. State v. Berger, 121 Iowa 581, 585, 96 N. W. 1094; State v. Lee, supra, 91 Iowa 499, 501, 502, 60 N. W. 119; 26 Am. Jur. 197, 198, section 57; 1 Wharton's Criminal Law, Twelfth Ed., 350, 351, 352, section 263; 1 Bishop on Criminal Law, Ninth Ed., 487, section 675. According to the State's theory, he was at common law a principal in the second degree. If he is guilty at all it is because he was present aiding and abetting the commission of the crime. Even at common law his guilt is not dependent on guilt of his brother Glenn. He might be convicted even though Glenn were acquitted. (It was conceded in argument that Glenn was acquitted upon the retrial of his case.) State v. Berger, supra; State v. Lee, supra; Christie v. Commonwealth, 193 Ky. 799, 237 S. W. 660, 24 A. L. R. 599, and annotation 603; 14 Am. Jur. 831, section 93; 1 Wharton's Criminal Law, Twelfth Ed., 346, 347, section 260. Thus the reason for the rule of evidence upon which the State relies is not applicable here.

While there is some confusion in the matter because some courts have not kept in mind the distinction between principals in the first and second degree on the one hand, and principal and accessory on the other, the sound rule, and we think the weight of authority, is that a confession by one who was at common law a principal in the first degree is not admissible

against one who was present aiding and abetting the commission of the crime (i.e., a principal in the second degree). State v. Beebe, 66 Wash. 463, 120 P. 122, 124, 125, and citations; McCabe v. State, 149 Ark. 585, 233 S. W. 771; 3 Bishop's New Criminal Procedure, Second Ed., 1230, sections 13(4), 14.

Our conclusion also finds support in decisions under statutes similar to our section 12895 that declarations of the principal after the commission of the offense, in the absence of one who was at common law an accessory before the fact, cannot be shown upon the trial of the latter and that the acquittal of the principal does not bar prosecution of the accessory. State v. Bogue, 52 Kan. 79, 34 P. 410, and citations; People v. Kief, 126 N. Y. 661, 27 N. E. 556; Ogden v. State, 12 Wis. 532, 78 Am. Dec. 754; 1 Wharton's Criminal Law, Twelfth Ed., 364, 366, section 277. See, also, State v. Lee, supra, 91 Iowa 499, 501, 502, 60 N. W. 119; State v. Smith, 100 Iowa 1, 4, 69 N. W. 269, which cites with approval State v. Bogue, supra, and People v. Kief, supra.

Somewhat in point are the numerous cases holding that declarations of a coconspirator, not in the presence of the accused, after the termination of the conspiracy are inadmissible against the accused. State v. Huckins, 212 Iowa 283, 288, 234 N. W. 554, and citations; State v. Archibald, 204 Iowa 406, 409, 215 N. W. 258; State v. Crofford, 121 Iowa 395, 403, 96 N. W. 889, and citations; 20 Am. Jur. 427, section 493; 22 C. J. S. 1316, section 770.

We think this case is governed by the rule of State v. Westfall, 49 Iowa 328, 333: "declarations of other persons, jointly charged with an offense, made after the act, are not competent against one who participated in the crime. Such declarations are regarded as any other hearsay testimony. It is just as inadmissible for one purpose as another." See, also, State v. McGuire, 50 Iowa 153; State v. Smith, 54 Iowa 656, 7 N. W. 123; State v. Condit, 307 Mo. 393, 270 S. W. 286, 290; State v. Nist, 66 Wash. 55, 118 P. 920, 922, Ann. Cas. 1913C, 409.

The right of this defendant under Code section 13842 to a separate trial presupposes the right to have his guilt or innocence determined upon evidence admissible as against him, free from the prejudicial effect of evidence tending to show only the guilt of his brother Glenn. Otherwise the right of separate

trial is of little value. State v. Beebe, supra, 66 Wash. 463, 120 P. 122, 124. See State v. Walker, 124 Iowa 414, 423, 100 N. W. 354. State v. Brown, 130 Iowa 57, 61, 106 N. W. 379, and State v. Leeper, 199 Iowa 432, 438, 200 N. W. 732, cited by the State, are distinguishable. In each case the defendant was not present at the commission of the crime but was at common law an accessory before the fact and not, as here, a principal. It is not clear from the Brown opinion what declarations of the principal were held to be admissible. They may have been part of the res gestae. At least, we do not think the opinion holds that declarations of the principal after the commission of the offense, not made in the presence of the accessory, are admissible against the latter. The Brown case seems not to have considered the effect of what is now section 12895. In the Leeper case there was evidence of a conspiracy and the acts and declarations of the principal, also a conspirator, held to be admissible were made during the existence and in furtherance of the conspiracy. The cases cited by the State from other jurisdictions also involve principal and accessory and not joint principals.

The State contends this evidence was not prejudicial because, it is said, defendant conceded that his brother Glenn killed Bolden. State v. Chumley, 229 Iowa 579, 294 N. W. 764, and cases there cited are relied upon. The record falls far short of showing such concession. See, on this question, State v. Dunne, 234 Iowa 1185, 1188, 15 N. W. 2d 296, 298, 299, and cases cited.

The State also argues that Officer Nevins testified Glenn admitted in the presence of this defendant, who remained silent, that he struck Bolden with a club and that the hearsay evidence is therefore without prejudice. While incompetent evidence is frequently held to be nonprejudicial where the same fact is shown by competent evidence, this principle has no application here. The incompetent evidence goes much further than any competent evidence in the record. See State v. Lyda, 129 Wash. 298, 225 P. 55, 57.

III. Defendant contends there was evidence that Glenn acted in self-defense and the jury should have been instructed upon that issue. This question may not arise upon a retrial since it is the hearsay evidence which was improperly admitted

that defendant claims tends to show Glenn so acted. It is sufficient to say that if upon a retrial it is claimed, and there is evidence, that Glenn acted in self-defense, the jury should be instructed that this defendant would not be guilty if he merely aided and abetted Glenn, and the burden is upon the State to negative self-defense. See State v. Wilson, supra, 234 Iowa 60, 87, 11 N. W. 2d 737, 751, and cases cited; State v. Sedig, 235 Iowa 609, 16 N. W. 2d 247, 248, and cases cited. Where the actual perpetrator of the crime acts in self-defense, one who aids and abets him is not criminally responsible. 40 C. J. S. 838, section 9b; 26 Am. Jur. 202, section 63; 14 Am. Jur. 831, 832, section 93; Kelley v. State, 79 Fla. 182, 83 So. 909, 16 A. L. R. 1465; Davis v. State, 107 Tex. Crim. Rep. 315, 296 S. W. 895, 896; Logan v. Commonwealth, 174 Ky. 80, 191 S. W. 676, 679. See, also, State v. Leeper, supra, 199 Iowa 432, 442, 443, 200 N. W. 732.

IV. Defendant offered to prove by different witnesses that the general reputation of deceased in his home town on and prior to the date of the crime, as to being violent and quarrelsome, was bad. The rejection of the offered testimony is assigned as error. This alleged error also may not occur upon a retrial. It is sufficient to say that if upon a retrial it is claimed, and there is evidence, that Glenn acted in self-defense, such testimony as was offered before will be proper and should be received. The reputation of deceased for being violent and quarrelsome bears on who was the aggressor and, if known to Glenn Wilson, also on his reasonable apprehension of danger. State v. Leeper, supra, 199 Iowa 432, 440, 200 N. W. 732; State v. Kelly, 196 Iowa 897, 902, 195 N. W. 614; State v. Beird, 118 Iowa 474, 92 N. W. 694; 40 C. J. S. 1221–1224, section 272a, b, c; 26 Am. Jur. 389–393, sections 344–346; annotation 64 A. L. R. 1029.

V. Several defense witnesses testified that at the time of the homicide defendant was suffering from arthritis and was at least partly incapacitated. It is claimed the jury could have found he was physically incapable of aiding and abetting Glenn and should have been instructed that in the event of such finding there should be an acquittal. No instruction to this effect was asked and none given.

We do not think failure to give such an instruction, in the absence of a request, constitutes reversible error. The jury was correctly instructed, in effect, that before defendant could be convicted it must find he knowingly aided and abetted his brother Glenn to kill Bolden unlawfully and feloniously. Of course, if defendant did not so aid his brother, whether because of physical incapacity or for any other reason, the instructions that were given required an acquittal. It would add little to the instructions to have said, in effect, that if defendant was physically unable to aid Glenn, of course he did not do so and the jury must acquit. In support of our conclusion, see State v. Hall, 233 Iowa 1268, 1272, 11 N. W. 2d 481, 482; State v. Dale, 225 Iowa 1254, 1257, 282 N. W. 715; State v. Matheson, 220 Iowa 132, 138–140, 261 N. W. 787; State v. Christensen, 205 Iowa 849, 852, 216 N. W. 710; State v. Dillard, 205 Iowa 430, 431, 216 N. W. 610; State v. Kendall, 200 Iowa 483, 487, 203 N. W. 806; State v. Hessenius, 165 Iowa 415, 433, 146 N. W. 58, L. R. A. 1915A, 1078; State v. Lightfoot, 107 Iowa 344, 351, 78 N. W. 41.

■ VI. Defendant challenges the sufficiency of the evidence. We think it sufficient to sustain the charge of manslaughter. Witnesses testified they saw three white men engaged in an altercation with a colored man outside the home of Rogers. Bolden (deceased) and Rogers were negroes. The Wilsons are white. There is also direct evidence that one of the three white men struck the negro with a club while the other two held him. Bolden died from a blow on his head. One of the witnesses said she heard Bolden ask Rogers to "get them off me." The record sufficiently identifies this defendant as one of the three white men engaged in the fight with the negro, Bolden, in which he was killed.

The three Wilsons, Bolden, Rogers, Ballinger, and McFarlin were the only ones present at the Rogers home at the time of the altercation which took place near a lilac bush where Bolden's body was found immediately afterward. Ballinger was sitting in a rocking chair in the house when the fight occurred. McFarlin was also in or near the house. Ballinger and McFarlin were the only white men present other than the three Wilsons. The record fairly eliminates both Ballinger and McFarlin (as well as Rogers) as participants in the homicide.

When the fight ended, Rogers, who was standing near his house, asked McFarlin to help him carry Bolden's body into the house. The three Wilsons were the only persons near Bolden's body when the altercation ended and Rogers and McFarlin picked up the body. When Officer Nevins arrived the three Wilsons were together in or near an automobile in front of the Rogers home. Defendant told the officer "there was a man hurt bad in the house. Glenn said there was a fight and I hit him." The officer then went in the house and saw Bolden dead.

There is evidence that a member of the Iowa State Guard in uniform passed by soon after the fight and inquired what was going on. Defendant replied, "None of your d—d business. Oh, you little boy scout, why don't you go home where you belong? Go on home before I knock your G—d d—d head off." Defendant then pushed the guardsman away with his elbow. Perhaps this incident in itself is entitled to but little weight. However, it seems inconsistent with the thought that defendant was a mere innocent bystander.

In the Glenn Wilson case, 234 Iowa 60, 11 N. W. 2d 737, we expressed the opinion that testimony of some of the witnesses in that case to the effect that Bolden was struck several times was incredible and could not be reconciled with the undisputed physical fact that there was but a single bruise upon Bolden's body (his head), evidently made by a single blow. The present case was tried after both Glenn and Albert Wilson were tried. The testimony of at least some of the witnesses in the present case does not correspond, in the respect noted, to their testimony in the Glenn Wilson trial. Here they did not say that more than one blow was struck and their testimony here is not irreconcilable with the physical facts.—Reversed.

All JUSTICES concur.