**STATE of Iowa, Appellee,**

v.

**Helena Florence BURRELL, Appellant.**

**No. 86–681.**

Supreme Court of Iowa.

Sept. 23, 1987.

Robert A. Wright, Sr., and Dennis L. Eaton of Wright, Wright & Borseth, Des Moines, for appellant.

Thomas J. Miller, Atty. Gen., Christie J. Scase, Asst. Atty. Gen., James Smith, Co. Atty., and Ronald L. Wheeler, Asst. Co. Atty., for appellee.

Considered by HARRIS, P.J., and McGIVERIN, LARSON, SCHULTZ, and CARTER, JJ.

CARTER, Justice.

Defendant, Helena Florence Burrell, appeals from her conviction, following jury trial, of murder in the first degree. She contends that the district court erred in failing to grant her a new trial based on a claim of ineffective assistance of trial counsel. In her argument, she identifies several instances which she suggests show that her trial counsel inadequately prepared and presented her case. Our review of the record fails to convince us that defendant is entitled to relief on this claim. Consequently, we affirm the judgment of conviction.

Defendant's conviction arose from the fatal shooting of her brother, Finnis Jackson, on the evening of January 10, 1985. Evidence presented at the trial shows the following facts. Prior to the shooting de-

fendant and her brother had been together for most of that evening. They met at Brown Sugar's Lounge on East University Avenue in Des Moines at approximately 7:45 p.m. They left the lounge at 8:15 p.m. to visit their sister, Karlylou. Finnis and defendant remained at Karlylou's home only a short time and then proceeded to the residence of the Jordan brothers ostensibly for purposes of Finnis purchasing some drugs. Upon their arrival, a fight ensued between Finnis and one of the Jordan brothers which produced several abrasions on Finnis's face. There is some evidence that defendant was also involved in this altercation but apparently she received no discernible physical injuries.

After departing the Jordan brothers' residence, Finnis, with defendant's assistance, tried to obtain a shotgun from some friends named Newby for the purpose of doing harm to the Jordan brothers. The Newbys, however, refused to give Finnis the gun. Defendant and Finnis then returned to Brown Sugar's Lounge where Finnis entered and was given first aid by his girlfriend, Sherri Carter, who tended bar there.

Later in the evening Finnis and defendant engaged in a heated argument in the parking lot outside the lounge. Finnis delivered a series of blows to defendant's head and body, knocking her to the ground and producing visible abrasions on her face. A witness to this altercation indicated that Finnis kicked defendant at least two times while she was on the ground and then returned to the lounge.

After Finnis reentered the lounge, defendant, who was then in possession of a .22 caliber pistol, fired one or more shots into the air. She, too, then reentered the lounge with the weapon. At this time, Finnis and Sherri Carter were in the back room. Defendant requested that Sherri fix her a drink. Sherri testified that defendant appeared to be calm at the time. In response to this request, Sherri proceeded from the back room to a position behind the bar where she commenced mixing a drink for defendant. When Finnis also came out of the back room into the bar area, defendant shot him through the head. The shooting occurred at 11:10 p.m. This was approximately ten minutes after the fight in the parking lot had concluded. Finnis died a few hours later.

Defendant was charged with first-degree murder and was initially represented by an attorney associated with the Polk County Offender Advocate's Office. That attorney filed notice of a defense of justification and secured an examination of defendant by a clinical psychologist. Psychiatric reports on Finnis Jackson were obtained from a Veterans Administration Hospital. Counsel hoped to make use of these reports to show the victim's violent propensities. That attorney also prepared other family members to testify concerning Finnis's propensity for violence.

Defendant's trial was scheduled to commence on the morning of August 5, 1985. At that time, she expressed dissatisfaction with her representation by the Offender Advocate's Office and made arrangements with a different lawyer to represent her. As a result of the change of counsel, her trial was continued until September 30, 1985.

At defendant's trial, the State's case was developed largely through the testimony of Sherri Carter, the Newbys, and business patrons of the lounge who witnessed the events. Investigating police officers also testified concerning the crime scene, as viewed on their arrival, and their conversations with defendant. The defendant did not testify. The only witness called in her behalf was the clinical psychologist who had examined her.

The clinical psychologist testified without objection concerning defendant's version of the facts as related to the witness. Defendant told the witness that she and Finnis had quarreled over defendant's refusal to let Finnis use her pistol for the purpose of causing harm to the Jordan brothers. Defendant also told the witness that Finnis in his anger had severely beaten and kicked her shortly before the shooting. The psychologist testified that given these circumstances defendant's response was an emotional one and not one of deliberation and thought. A gun was utilized because it

was the weapon available to defendant for an immediate emotional response. The witness indicated that this opinion would not be altered if it was shown that defendant appeared calm upon her reentry into the lounge.

After the jury's verdict finding her guilty of first-degree murder, defendant again changed counsel. Her latest counsel prepared a motion for new trial, asserting that the quality of representation which defendant had received from her trial counsel fell below the standard guaranteed by the sixth amendment to the federal constitution. A hearing was held on this motion at which four witnesses testified: the clinical psychologist who testified at the trial, defendant's original trial counsel, counsel who represented defendant during the trial, and defendant.

Through this testimony, defendant's new counsel attempted to show that trial counsel had (1) inadequately prepared his expert witness; (2) failed to adequately examine grand jury transcripts in order to adequately cross-examine key witnesses, refresh their recollection, and impeach their testimony; and (3) failed to offer the testimony of two witnesses before the grand jury as substantive evidence in defendant's case in chief. The district court found no merit in any of these contentions. In combination, the trial record and the evidentiary record on the motion for new trial are sufficient to permit the review of these claims on direct appeal. In examining counsel's conduct, we review de novo the totality of relevant circumstances. *State v. Risdal,* 404 N.W.2d 130, 131 (Iowa 1987).

### I. *Alleged Failure to Properly Prepare Expert Witness.*

Defendant in her motion for new trial urged that her trial counsel was ineffective with respect to preparation of the clinical psychologist who testified as an expert witness in her behalf. It was asserted in the motion and at the hearing held thereon that the witness was only questioned generally concerning the psychological effects of a "cooling-off period" following emotional trauma rather than being directly asked whether defendant had, in the witness's opinion, acted in self-defense. The record does not support these contentions.

■ Defendant's trial counsel questioned the expert witness as follows concerning the self-defense claim:

Q. A survival mechanism, putting it in the terms of this proceeding, would be a self-defense mechanism? A. Yes, I would say so.

Q. Given the circumstances previously presented, being struck and beat, if the individual felt, sensed, another attack, would their response generated by the suspicion or impending fear of that next attack be a result of the previous encounter immediately previous? A. Sure, they can be connected.

Q. In sort of a conclusion, let me capture this one carefully; I want to take some time on this. In our hypothetical, would the actions of the victim, for our purposes, which would be the defendant, could this be construed as the actions of one fearing for their own life? A. They could be construed that way.

Q. So then your ultimate opinion here is that the defendant defended herself from harm? A. I think we could postulate that, yes.

The record clearly shows defendant's trial counsel questioned the expert witness both hypothetically as to the psychological effects of trauma and specifically as to its potential effect on defendant's conduct in the present case. There is no merit to the claim of ineffective assistance with respect to preparation and examination of the expert witness.

### II. *Alleged Failure to Make Proper Use of Grand Jury Testimony in Cross-examination of Witnesses.*

Defendant's most strenuous argument on appeal concerns the alleged failure of her trial counsel to make proper use of the grand jury testimony of several State witnesses for purposes of effective cross-examination. She urges that as a result of this omission she was denied the opportunity to present to the jury an accurate ac-

count of the events that transpired on the evening of the shooting.

■ In describing the defense attorney's function, we have approved the following guideline:

> The defense attorney's function consists, in large part, of the application of professional judgment to an infinite variety of decisions in the development and prosecution of the case. A determination whether any given act or omission by counsel amounted to ineffective assistance cannot be divorced from consideration of the peculiar facts and circumstances that influenced counsel's judgment. In this fact-laden atmosphere, categorical rules are not appropriate.

*Schrier v. State*, 347 N.W.2d 657, 661–62 (Iowa 1984) (quoting *United States v. Decoster*, 624 F.2d 196, 203 (D.C.Cir.1979)). Evaluating an allegation that assistance of counsel was ineffective involves a two-step process: first, it must be shown that the attorney failed to exercise customary skills and diligence that a reasonably competent attorney would perform under similar circumstances; then it must also be established that prejudice resulted sufficient to cast doubt on the integrity of the proceedings which led to the conviction. *Taylor v. State*, 352 N.W.2d 683, 685 (Iowa 1984).

The record reflects that, at the time defendant's trial was originally scheduled to commence, the State had not made the transcripts of grand jury testimony available to the offender advocate attorney who was representing her. That attorney believed that these materials would become available following the testimony of each witness as "Jencks-type" discovery. After defendant changed attorneys, the prosecutor, sometime during the week prior to the September 30 trial date, did permit defendant and her new counsel to examine the transcripts of grand jury testimony. These contained the testimony of twenty-two witnesses. They were not provided with copies but were assured that the transcripts would be available to them for use during the trial.

Prior to trial, defendant's counsel read the grand jury testimony of two witnesses, and defendant read the testimony of several other witnesses. The record does not reflect which witnesses these were. The record also reflects that the offender advocate attorney had taken discovery depositions of most of the key State witnesses and made transcripts of those depositions available to the attorney who succeeded in defendant's representation. The record does not reflect the extent to which defendant's counsel made use of these depositions in preparation for trial nor have the contents of these depositions been made a part of the record, either at trial or during the hearing on the motion for new trial. No argument is made on appeal concerning any alleged misuse of the depositions in the defense of the case.

With respect to improper use of the grand jury transcripts, defendant urges that certain witnesses testified far more vividly and in greater detail before the grand jury than at trial concerning the severity of the beating administered to her by the victim. She also asserts that the testimony of certain witnesses before the grand jury concerning her mental state at or subsequent to the time of the shooting differs substantially from their trial testimony.

One of the claims made is that two police officers testified before the grand jury concerning statements which defendant made to them on the evening of January 10, 1985, about the beating administered to her by the victim. Defendant contends that these officers were not questioned at trial about these statements. The record reflects that this contention is not entirely correct. One of these officers, James Bowersox, was questioned as follows at the trial by defendant's counsel:

> Q. Was Miss Burrell crying? Was she silent? Was she in a daze? What was her, I guess, mental condition on your observation when you arrested her? A. She was weeping and obviously upset.
>
> Q. She didn't say anything, did she? A. Yes. She did make several statements.
>
> Q. Did she say anything? What did she say? A. When I had her hand-

cuffed and was taken to the car, she did state several times that she had been beaten by the victim.

Defendant also states that the testimony of David Bradley before the grand jury concerning the details of the beating she received was considerably more vivid and detailed than was his trial testimony on this subject. This contention is at least partially correct. Before the grand jury, David Bradley testified as to having a good view of the altercation between defendant and her brother. He described in detail how Finnis struck defendant in the side of the face knocking her to the ground and then kicked her "three or four times." At trial, this witness stated that his view of the attack was somewhat obstructed but that he saw Finnis strike defendant on the "upper part of her body" knocking her down and that Finnis then appeared to kick her "a couple of times." Upon further examination, he stated that defendant may have been kicked more than twice. David Bradley also testified before the grand jury that the dispute between defendant and Finnis, as discerned from their conversation, appeared to be over possession of a pistol. He did not testify as to the latter point at trial.

Defendant also asserts that her trial counsel was ineffective in not having read and made use of Sherri Carter's grand jury testimony in order to assure a more effective cross-examination. Specifically, she contends that the trial testimony of Sherri Carter permitted an inference to be drawn that defendant had not been beaten by Finnis Jackson but had instead obtained her physical injuries in the earlier altercation with the Jordan brothers. Sherri Carter's testimony both before the grand jury and at trial was that she had not witnessed the altercation in which Finnis Jackson struck and kicked defendant. However, she never disputed that it had occurred. As to whether defendant's observable facial injuries, which were depicted by photographs in evidence, were received at the hands of the Jordan brothers, Sherri Carter testified:

Q. Did that eye start swelling in the bar that night? A. I do not know. All I know is that after the shooting had happened her face was not like that.

Q. Do you think the police gave her a black eye? A. I don't know.

Q. She didn't complain that she was hurting? A. The only thing she said to me is that when they went to [the Jordan brothers] and Finnis had got jumped on that she had got hit too.

Q. But that wasn't the injury from that? A. No.

Defendant also asserts that Sherri Carter's testimony before the grand jury differed from her trial testimony with respect to defendant's mental state at the time of the shooting. We believe that these apparent discrepancies are capable of being resolved. Sherri Carter's testimony to the grand jury about defendant's apparent incoherent mental state referred to events immediately following the shooting. Her trial testimony concerning defendant's apparent calm demeanor referred to events immediately prior to the shooting.

■ When defendant's claims concerning the alleged ineffective use of the grand jury testimony are considered as a whole and measured by the two-pronged standard that must be applied in determining such claims, we conclude that she has failed to establish any basis for relief. Perhaps her counsel should have been more diligent in reviewing the transcripts of the grand jury testimony prior to trial. Arguably, had he done so, his cross-examination would have been more effective. As a consequence of a more effective cross-examination, defendant's theory of defense both with respect to the claim of justification and the negation of deliberation and premeditation might have been more forcefully presented. Counsel did not, however, fail to make a record upon which these claims could be presented to the jury. Notwithstanding the fact that a potential for a more effective presentation existed, we conclude that too many variables exist in this chain of

events to establish a constitutional deprivation under the sixth amendment.[1]

### III. *Other Claims of Ineffective Assistance of Counsel.*

Defendant also claims ineffective assistance of counsel in regard to the failure to call family members (brothers and sisters of defendant and Finnis) to testify concerning Finnis's propensities for violence; failure to place in evidence hospital records confirming Finnis's propensities for violence; failure to seek the admission in evidence of the grand jury testimony of Katherine Mack, a witness not available for trial; and failure to seek admission in evidence of defendant's own testimony before the grand jury on the theory that she (having elected not to testify) was an unavailable witness. We find that none of these matters offers defendant any ground of relief from her conviction.

■ The use of character evidence to show the victim's propensities for violence, which has been suggested in defendant's argument, rests on the theory of "reasonable anticipation of danger" approved in *State v. Wilson,* 235 Iowa 738, 743, 17 N.W.2d 138, 142 (1945). Within the sound discretion of the trial court, evidence of this nature would have been admissible. We are not convinced, however, that had this evidence been utilized the result would have been altered. Finnis Jackson's propensities for violence had been shown by other evidence in the case, including direct evidence of a recent assault upon the defendant.

■ The suggested use of Katherine Mack's grand jury testimony and defend-

ant's own grand jury testimony is predicated on the so-called residual hearsay exception contained in Iowa Rule of Evidence 804(b)(5). Among the conditions for admissibility under that rule are (1) that the declarant be unavailable and (2) that the evidence is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts. We reject out of hand any claim that defendant was unavailable as a witness so as to permit the use of her grand jury testimony under this rule. Whether or not Katherine Mack's grand jury testimony was more probative on the point for which it would have been offered than any other evidence which defendant could procure through reasonable efforts is problematic. Consequently, the admissibility of that evidence is sufficiently doubtful that counsel's failure to offer it cannot provide the basis for a claim of ineffective counsel.[2]

■ Finally, we consider defendant's argument that her perception of her trial counsel's presentation caused her not to testify at trial, a circumstance now deemed to have been prejudicial to her defense. Her failure to testify occurred, she suggests, because her counsel's failure to offer available corroborating evidence of her self-defense claim convinced her that if she did testify she would not be believed. Because we have previously found that counsel's performance was sufficient when judged by prevailing constitutional standards, we do not deem it prudent to grant defendant relief based upon her subjective reactions to counsel's performance. We have considered all issues argued, notwith-

---

1. On sixth amendment claims,

   defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. *This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.*

   *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984) (emphasis added).

2. Katherine Mack's grand jury testimony indicates that she was a patron of the lounge when the altercation in the parking lot occurred. She was not an eyewitness to defendant's beating. She told the grand jury that she had heard persons who had been outside the lounge at the time confirm that defendant had been struck by her brother. She further testified that when defendant reentered the lounge she appeared to be "messed up" and showed signs of having been beaten about the head.

standing any failure on our part to discuss each of them in detail in this opinion. We find no basis upon which to overturn defendant's conviction. The judgment of the district court is affirmed.

AFFIRMED.